**In re Larry GRIFFEY and Nora Jean Griffey, Debtor.**

**Larry Griffey and Nora Jean Griffey, Plaintiffs–Appellants,**

**v.**

**U.S. Bank, Defendant–Appellee.**

**BAP No. CO–05–066.**
**Bankruptcy No. 03–34845–ABC.**
**Adversary No. 04–01406–ABC.**

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Dec. 12, 2005.

Submitted on the briefs: * Stephen E. Berken, Jennifer O. Pielsticker, Law Offices of Stephen Berken, Denver, CO, for Appellants.

---

* The parties did not request oral argument, and

after examining the briefs and appellate rec-

Before BOHANON, CORNISH, and MICHAEL, Bankruptcy Judges.

## OPINION

BOHANON, Bankruptcy Judge.

The Appellants appeal the "Order Denying Motion for Reconsideration and for Entry of Default Judgment." As explained below, the Court reverses and remands this matter to the bankruptcy court.

### Background

The facts are undisputed. The Appellants are the debtors in the underlying Chapter 13 bankruptcy case, and they brought a complaint against U.S. Bank ("the Bank"), seeking to "strip off" the Bank's second mortgage on their primary residence. The Bank did not appear or answer the complaint. Consequently, the Appellants complied with the bankruptcy court's direction and filed a motion for default judgment. The Bank again did not respond. The bankruptcy court, however, denied the motion for default judgment and dismissed the complaint based on its interpretation of the Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

The Appellants appealed to the United States District Court for the District of Colorado, but that appeal was dismissed for inadequate evidence in the record. The Appellants later sought to reopen the bankruptcy case in order to supplement the record with an affidavit setting forth the value of the home and the proof of claim showing that the amount due on the first mortgage was $90,290.97. Based on these uncontested figures, it is evident that the Bank holds a wholly unsecured claim.

The bankruptcy court reopened the case and allowed the Appellants to supplement the record.

The Appellants then asked the bankruptcy court to reconsider its order denying the motion for default judgment. The bankruptcy court refused to reconsider its prior ruling and denied the Appellants' motion to reconsider. This appeal followed.

### Standard of Review

■ Because the facts are uncontested and we are left only with questions of law, we review the bankruptcy court's conclusions under the de novo standard. *In re Bartee,* 212 F.3d 277, 284 (5th Cir.2000); *In re Lam,* 211 B.R. 36, 38 (9th Cir. BAP 1997).

### Discussion

■ The issue is whether 11 U.S.C. § 1322(b)(2) permits Chapter 13 debtors to remove a creditor's lien attached to the debtors' homestead where the creditor's claim is wholly unsecured as defined by 11 U.S.C. § 506(a).

We start our analysis with the language of the applicable sections of the Bankruptcy Code. Section 1322(b)(2) of the Bankruptcy Code allows Chapter 13 debtors to use a Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). This provision is often referred to as the antimodification clause, and "[p]ut more directly, [it] bars a debtor from modifying the rights of a creditor who has a claim secured only by the

ord, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed.

R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

debtor's principal residence." *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 609 (3rd Cir.2000).

Section 506(a) defines whether claims are treated as secured or unsecured. That section states that:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

In *Nobelman*, the Supreme Court held that the antimodification clause of § 1322(b)(2) prevents debtors from removing, commonly called "stripping down," an unsecured portion of an undersecured creditor's claim on the debtors' homestead.[1] The debtors had argued that the language of § 1322(b)(2) permitted them to "strip down" the unsecured portion of the bank's lien. In other words, the debtors urged an interpretation of the antimodification clause that would apply that clause only to portions of claims that were deemed secured as defined by § 506(a). The Supreme Court said that this interpretation made sense as a matter of grammar, but explained why it did not agree:

Petitioners propose to reduce the outstanding mortgage principal to the fair market value of the collateral, and, at the same time, they insist that they can do so without modifying the bank's rights "as to interest rates, payment amounts, and [other] contract terms." Brief for Petitioners 7. That appears to be impossible. The bank's contractual rights are contained in a unitary note that applies at once to the bank's overall claim, including both the secured and unsecured components. Petitioners cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component. Thus, to preserve the interest rate and the amount of each monthly payment specified in the note after having reduced the principal to $23,500, the plan would also have to reduce the term of the note dramatically. That would be a significant modification of a contractual right.

. . . .

In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

*Nobelman*, 508 U.S. at 331–332, 113 S.Ct. 2106.

The decision in *Nobelman* then stands for the proposition that the antimodifica-

---

1. Interestingly, there is subtle distinction drawn between "stripping off" and "stripping down" a lien. If the entire lien is removed, then it is considered "stripping off." If the lien is only partially secured, then it is considered "stripping down." *See In re Lam*, 211 B.R. at 37 n. 2.

tion clause of § 1322(b)(2) bars Chapter 13 debtors from stripping down a creditor's claim when any portion of that claim is secured by the debtors' home. To do so would alter the creditor's rights, something that is explicitly prohibited by the antimodification clause of § 1322(b)(2).

The bankruptcy court held that *Nobelman* controlled in this instance. However, the vast majority of the authority on this issue contradicts the bankruptcy court's position. See *In re Zimmer,* 313 F.3d 1220 (9th Cir.2002); *In re Lane,* 280 F.3d 663 (6th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122 (2nd Cir.2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357 (11th Cir. 2000); *In re Bartee,* 212 F.3d 277; *In re McDonald,* 205 F.3d 606; *In re Mann,* 249 B.R. 831 (1st Cir. BAP 2000); *In re Lam,* 211 B.R. 36; *Pierce v. Beneficial Mortgage Co. of Utah (In re Pierce),* 282 B.R. 26 (Bankr.D.Utah 2002); *In re Samala,* 295 B.R. 380 (Bankr.D.N.M.2003); *In re German,* 258 B.R. 468 (Bankr.E.D.Okla.2001); *In re Lee,* 161 B.R. 271 (Bankr.W.D.Okla. 1993); *Waters v. The Money Store (In re Waters),* 276 B.R. 879 (Bankr.N.D.Ill. 2002); *In re King,* 290 B.R. 641 (Bankr. C.D.Ill.2003).

We agree with those courts that *Nobelman* does not extend to the circumstances in this case. Our conclusion is supported by the plain language of § 1322(b)(2). The Court of Appeals for the Eleventh Circuit made this point when it stated that:

> [W]hile the antimodification clause uses the term "claim" rather than "secured claim" and therefore applies to both the secured and unsecured part of a mortgage, the antimodification clause still states that the claim must be "secured only by a *security interest in* ... the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). If a mortgage holder's claim is wholly unsecured, then after the valuation that Jus-

tice Thomas said that debtors could seek under § 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence. The bank simply has an unsecured claim and the antimodification clause does not apply. On the other hand, if any part of the bank's claim is secured, then, under Justice Thomas's interpretation of the term "claim," the entire claim, both secured and unsecured parts, cannot be modified. We think this reading reconciles the various parts of the Court's opinion. *In re McDonald,* 205 F.3d at 612.

The Court of Appeals for the Fifth Circuit expressed a similar view:

> Given the express instruction to visit § 506(a) first, it is no wonder the majority of courts hold to the same reasoning put forward by Debtor. If it is correct to "look[ ] to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," then it stands to reason that valuation will control the determination of the mortgagee's security interest—i.e., whether it is a secured or unsecured claim. "Once we accept that courts must apply § 506(a), then it follows, even under *Nobelman,* that a wholly unsecured mortgage holder does not have a secured claim." In the case of a wholly undersecured junior mortgage, the valuation function of § 506(a) obviates the need to even consult § 1322(b)(2). After all, Justice Thomas's determination that the creditor bank held a secured claim rested upon the fact that the lien was supported by at least some collateral value in the home. Unlike the bank in *Nobelman,* which held both a secured claim and an unsecured claim,[the creditor] holds only an unsecured claim. Without an allowed secured claim, a creditor cannot invoke § 1322(b)(2).

*In re Bartee,* 212 F.3d at 290 (citations omitted).

Based on this reasoning, we agree with the majority of courts that the antimodification clause of § 1322(b)(2) does not apply to the holder of a wholly unsecured claim. Succinctly stated, the Bank "is thus the holder of an 'unsecured claim,' pure and simple—and if the words of § 1322(b) mean what they plainly say, the rights of a creditor holding such a claim 'may' be modified by the debtors' Chapter 13 plan." *In re Lane,* 280 F.3d at 668.

This result may seem arbitrary, but it is, we believe, the one required by the plain meaning of the statute. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241–242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that federal courts are to apply the plain meaning of the statute absent the rare instance of where the result would be absurd). See also, *In re Lane,* 280 F.3d at 669 ("Our job, obviously, is to see that congressional enactments are applied in accordance with the presumed intent of Congress, as manifested in the language Congress has chosen to use."); *In re Horwitz,* 167 B.R. 237, 239 (Bankr. W.D.Okla.1994) ("[T]he [Supreme] Court says that when a provision has a plain meaning judges are to apply it and not otherwise explicate the [Bankruptcy] Code.").

Unlike *Nobelman,* the Bank is the holder of a wholly unsecured claim. Consequently, application of the analysis set forth above leads only to the conclusion that the bankruptcy court erred.

Conclusion

Accordingly, the order appealed from is hereby REVERSED, and this matter is REMANDED to the bankruptcy court for further proceedings in accordance with this Opinion.