# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 11-6012

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Michael James Fisette, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Michael James Fisette, | * | Appeal from the |
| | * | United States |
| Debtor - Appellant, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| v. | * | |
| | * | |
| Jasmine Z. Keller, | * | |
| | * | |
| Trustee - Appellee. | * | |

---

Submitted: July 27, 2011
Filed: August 29, 2011

---

Before SCHERMER, VENTERS, and NAIL, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Debtor, Michael James Fisette (the "Debtor"), appeals from the bankruptcy court's February 10, 2011 order confirming his modified Chapter 13 plan, over his objection. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse

and remand this matter to the bankruptcy court for further proceedings consistent with this opinion.

## ISSUES

The issue on appeal is whether the bankruptcy court may confirm the debtor's plan which provides for the avoidance of two junior liens on the Debtor's principal residence. In particular, we consider whether: (1) 11 U.S.C. § 1322(b)(2) prevents a debtor from modifying the rights of junior lienholders of liens on his principal residence if the value of the residence is less than the amount owed to the senior lienholder; and (2) if not, whether such modification is contingent upon the debtor's receipt of a Chapter 13 discharge.

## BACKGROUND

Within one year before the filing of his Chapter 13 petition, the Debtor had filed a Chapter 7 bankruptcy case, and the Debtor received a discharge in his Chapter 7 case. Due to the proximity in the time of the filing of his Chapter 7 and Chapter 13 cases, the Debtor was not eligible for a Chapter 13 discharge pursuant to § 1328(f) of Title 11 of the United States Code (the "Bankruptcy Code").

On his Schedule A, the Debtor listed his homestead. He valued the property at $145,000, indicating that the property was "appraised at" $145,000. On his Schedule D, the Debtor listed the claim of the senior secured creditor holding a lien on the Debtor's homestead in an amount that exceeded the appraised value of the property. The Debtor also listed on his Schedule D two creditors holding second and third liens on the homestead.

The Debtor's originally filed Chapter 13 plan treated the claim of the senior lienholder as secured, but avoided the liens of the second and third lienholders - treating their claims as wholly unsecured. It included nearly identical provisions for

the "strip off"[1] of the second and third liens held by the two junior lienholders. In paragraphs 14 and 15 (combined below), it provided, in pertinent part, that:

> Confirmation of this plan without objection from [the second lienholder or the third lienholder], or its assignee, or over the objection of [the second lienholder or the third lienholder], or its assignee, shall constitute an acknowledgment and acceptance that there is no equity in the debtor's residential real property . . ., over and above the first mortgage . . . to which the lien of the [second or third] mortgage can attach. The order confirming the plan shall constitute a finding by the bankruptcy court that the fair market value of the real estate is $145,000; and that the balance owed to [the first lienholder] is $176,312.00; therefore the claim of [the second lienholder or the third lienholder] or its assignee is wholly unsecured. The real estate . . . shall vest in the debtor free and clear of the [the second or third] mortgage upon completion of all payments due to the trustee under the plan. [The second lienholder or the third lienholder], or its assignee, shall cancel the [second or third] mortgage within 20 days after the trustee's final report to the court showing completion of the plan. If [the second lienholder or the third lienholder], or its assignee, fails to cancel the [second or third] mortgage, debtor may obtain an order and judgment voiding the [second or third] mortgage, its claim, if any, shall be paid as an unsecured, nonpriority claim.

The Debtor's plan proposed to pay $4,922.00, the exact amount listed on his Schedule F as owed to unsecured creditors other than the second and third lienholders, to unsecured creditors. The Debtor's counsel explained that the plan proposed to strip off the junior lienholders' liens. Their claims were included in the plan as claims that are unsecured, but they would not receive any part of the distribution to unsecured creditors.

---

[1] "The term 'strip off' is colloquially used when, there being no collateral value for a mortgage, the entire lien is proposed to be avoided. The term 'strip down' is used when, there being insufficient collateral value for a mortgage, the lien is proposed to be reduced to the value of the collateral. *In re Mann*, 249 B.R. 831, 832 n.1 (B.A.P. 1st Cir. 2000) (citations omitted).

No written objections to the confirmation of the Debtor's original plan were filed and the Debtor's valuation of the property, which was based on an appraisal, was not contested during the plan confirmation process. The Debtor submitted a brief in support of confirmation of his plan. After a hearing during which the Debtor's counsel argued in favor of confirmation of the plan that allowed for the strip off of the junior liens and the bankruptcy court commented that "the law in this jurisdiction clearly does not allow the debtor to strip the second or third mortgage secured only by a lien on the debtor's homestead," the court denied confirmation of the Debtor's plan. The Debtor sought leave to appeal from the bankruptcy court's interlocutory order denying confirmation of his plan, but the request was denied and the appeal was dismissed. The Debtor then filed an amended plan that provided that the junior lienholders would retain their liens and that treated their claims as secured. The bankruptcy court confirmed the amended plan over the Debtor's objection and this appeal ensued.

In this appeal, the Debtor asks us to decide that a Chapter 13 debtor may strip off a wholly unsecured junior mortgage lien on his principal residence, and that the strip off of such lien should be allowed in a case where a debtor is ineligible for a discharge. The Chapter 13 trustee disagrees with the Debtor on both issues, and amicus curiae TFC National Bank filed its brief in support of the Chapter 13 trustee's position.

## STANDARD OF REVIEW

We review the bankruptcy court's conclusions of law *de novo*. *Green Tree Servicing v. Coleman (In re Coleman)*, 392 B.R. 767, 769 (B.A.P. 8th Cir. 2008)("Statutory interpretation is a question of law that [appellate courts] review de novo.") (quoting *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir.2006)). The facts are not in dispute.

**DISCUSSION**

As an initial matter, we note that the Debtor's appeal of the order confirming his plan was proper. *Zahn v. Fink (In re Zahn)*, 526 F.3d 1140, 1141 (8th Cir. 2008)(debtor was an "aggrieved party" with standing to appeal confirmation of her own plan).

## I.    Strip Off of Wholly Unsecured Liens

A determination of whether the Bankruptcy Code allows the "strip off" of the junior liens on the Debtor's principal residence if they are wholly unsecured "involves the interaction of two provisions of the Bankruptcy Code - [§] 506(a) and [§] 1322(b)(2)." *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 124 (3d Cir. 2001).

Bankruptcy Code § 506(a) governs classification of a claim. It provides, in pertinent part, that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . , is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . ., and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

With an exception, a Chapter 13 debtor may modify the rights of creditors, such as by avoiding their liens, through his plan. Section 1322(b)(2) of the Bankruptcy Code permits a Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims . . . ." 11 U.S.C. § 1322(b)(2).

In *Nobleman v. Am. Sav. Bank*, 508 U.S. 324 (1993), the Supreme Court examined the relationship between § 1322(b)(2) and § 506(a) with respect to an undersecured lienholder. *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277, 285 (5th Cir. 2000) (citing *Nobleman,* 508 U.S. 324). It held that the debtor could not "strip down" the unsecured portion of the creditor's undersecured claim on the debtor's principal residence. *Nobleman*, 508 U.S. at 332. The Court rejected the debtors' argument that § 1322(b)(2)'s antimodification clause should apply only to the secured portion of the claim, and not to the unsecured portions of the undersecured claim. *Id.* at 328-332. The phrase "claim secured only by a security interest in real property that is the debtor's principal residence" in §1322(b)(2) included both the secured and the unsecured portion of the *Nobleman* creditor's undersecured claim. *Id.* at 330-31. The Court explained that the debtors could not modify the payment and interest terms for the unsecured portion of the claim without modifying the rights of the creditor with respect to the secured portion of the claim, thus violating § 1322(b)(2). *Id.* at 331. "The decision in *Nobleman* then stands for the proposition that the antimodification clause of § 1322(b)(2) bars Chapter 13 debtors from stripping down a debtor's claim *when any portion of that claim is secured by the debtor's home.*" *Griffey v. U.S. Bank (In re Griffey*), 335 B.R. 166, 168-69 (B.A.P. 10th Cir. 2005) (emphasis added).

The *Nobleman* court did not directly answer the question of whether a debtor could strip off a *wholly* unsecured lien on the debtor's principal residence.

Before and after *Nobleman*, bankruptcy courts in Minnesota have held that a debtor may not strip off a wholly unsecured lien on his principal residence without violating the provisions of § 1322(b)(2). *See, e.g., In re Frame*, No. 09-41010 (Bankr. D. Minn. September 23, 2009); *In re Hughes,* 402 B.R. 325, 326 (Bankr. D. Minn. 2009); *In re Hussman*, 133 B.R. 490, 491-93 (Bankr. D. Minn. 1991). Overall, these courts interpret § 1322(b)(2) to mean that a debtor cannot modify the rights of *any* creditor with a "claim secured only by a security interest in real property that is the

debtor's principal residence." They believe that the type of the claimant is controlling, and that determination of the secured status of the claim under § 506(a) is irrelevant when applying §1322(b)(2)'s antimodification clause. We respectfully disagree with these cases.

We agree with courts holding that §1322(b)(2) does not bar a Chapter 13 debtor from stripping off a wholly unsecured lien on his principal residence, a position that has been adopted by all Circuit Courts of Appeal to address this issue. *See, e.g., Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Pond*, 252 F.3d at 127; *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357 (11th Cir. 2000);[2] *In re Bartee*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000).[3] Bankruptcy appellate panels of the Tenth and First Circuits have agreed with this conclusion. *Griffey*, 335 B.R. 166; *In re Mann*, 249 B.R. 831 (B.A.P. 1st Cir. 2000).[4]

As these courts have recognized, we first determine whether the creditor holds a secured claim by looking to § 506(a). The *Nobleman* Court classified the creditor's claim under § 506(a) as the first step in its analysis, noting that the debtors were "correct in looking to § 506(a) for a judicial valuation of the collateral to determine

---

[2]    In *American Gen. Finance, Inc. v. Dickerson (In re Dickerson)*, 222 F.3d 924, 926 (11th Cir. 2000), the Eleventh Circuit explained that it was bound by its prior decision but, if it were to write on a clean slate, it would adopt the position that a wholly unsecured lien could not be avoided.

[3]    In two unpublished per curiam decisions, the Fourth Circuit affirmed decisions of the district court that allowed the strip off of wholly unsecured liens on debtors' residences. *See First Mariner Bank v. Johnson*, 411 B.R. 221, 225 (D.Md. 2009), *aff'd* 407 Fed. Appx. 713 (4th Cir.2011) (per curiam) (unpublished); *Suntrust Bank v. Millard (In re Millard)*, 414 B.R. 73 (D. Md. 2009), *aff'd* 404 Fed. Appx. 804 (4th Cir. 2010) (per curiam) (unpublished).

[4]    *See also Lam v. Investors Thrift (In re Lam)*, 211, B.R. 36 (B.A.P. 9th Cir. 1997) (case decided prior to the time of the Ninth Circuit's decision in *Zimmer*)

the status of the [creditor]'s secured claim." *Nobleman*, 508 U.S. at 328; *Bartee*, 212 F.3d at 286 (recognizing that the *Nobleman* Court "confirm[ed] that §506(a) is the starting point in the analysis. . . .") (quoted in *Lane*, 280 F.3d at 667)). In accordance with the language of § 1322(b)(2), only if the creditor is the holder of a secured claim, meaning that its claim is at least partially secured *after* application of §506(a), will it be eligible for the protection of §1322(b)(2)'s antimodification provision. *Zimmer,* 313 F.3d at 1226 ("While it is clear that the term 'claim secured only by' in the antimodification clause is not limited to 'secured claims,' it is equally clear that 'holders of secured claims' does refer to the term of art as defined in §506(a)."); *Lane*, 280 F.3d at 668 ("And the only apparent reason why the classification [of the claim] could make a difference is that the special protection accorded by the antimodification provision extends to the rights of holders of 'secured claims' and does not extend to the right of holders of 'unsecured claims.'"). The creditor in *Nobleman* was "'still the 'holder' of a 'secured claim'" after application of § 506(a) because its claim was partially secured by value in the collateral, and it was, therefore, entitled to have its rights protected under § 1322(b)(2). *Zimmer,* 313 F.3d at 1224 (quoting *Nobleman*, 508 U.S. at 329).

The facts in *Nobleman* are distinguishable from the facts in this case. Here, the value of the Debtor's principal residence is less than the claim of the senior lienholder and there is, therefore, no value securing the junior lienholders, rendering their claims unsecured under § 506(a). Section 1322(b)(2)'s antimodification provision does not apply to them, and their rights may properly be modified under § 1322(b)(2). *Lane*, 280 F.3d at 668 ("Section 1322(b)(2) says, without qualification and in the plainest of English, that a Chapter 13 plan 'may' modify the rights 'of holders of unsecured claims.' ").

Contrary to the arguments of the Chapter 13 trustee and TFC National Bank, an explanation by the *Nobleman* Court that the language of § 1322(b)(2) focuses on the "rights" of holders of claims, instead of on the value of the claims, does not mean

that a wholly unsecured lien on a debtor's principal residence is protected from modification. *Nobleman*, 508 U.S. at 328 (the debtors' "interpretation fails to take account of § 1322(b)(2)'s focus on 'rights' "). The Court in *Nobleman* pointed to certain rights protected by § 1322(b)(2) that were held by the partially secured creditor in that case, and stated that such rights were not "limited by the valuation of its secured claim." *Id.* at 329. However, the *Nobleman* Court did not examine the rights protected by § 1322(b)(2) until *after* it established that the creditor held a secured claim. *See Zimmer*, 313 F.3d at 1226 ("Finally, and only after determining that the creditor was the holder of a secured claim and thus eligible for antimodification protection, the Court proceeded to the question of exactly what was entitled to such protection.") (*citing Nobleman*, 313 F.3d at 329-330)); *Tanner*, 217 F.3d at 1360 ("only the rights secured by some remaining equity will be protected from modification"). Moreover, the rights identified by the *Nobleman* Court were those rights the creditor had under the mortgage instruments that were enforceable under state law.[5] As the holders of claims with no value to support their liens on the Debtor's property, any rights afforded to the junior lienholders under state law would presumably be only empty rights in the sense that they would not provide the lienholders with a remedy. *See Lam*, 211 B.R. 40 (state law rights of an unsecured lienholder, if any, are empty rights).

In *Lane*, the Sixth Circuit Court of Appeals provided a helpful summary of the position we follow in this case:

---

[5] The rights that existed under the applicable state law in *Nobleman* included:

> [T]he right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan until the debt is paid off, the right to accelerate the loan upon default and to proceed against [the] residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.

*Nobleman*, 508 U.S. at 329 (citation omitted).

The message, to recapitulate, is this:

— Section 1322(b)(2) prohibits modification of the rights of a holder of a secured claim if the security consists of a lien on the debtor's principal residence;

— Section 1322(b)(2) permits modification of the rights of an unsecured claimholder;

— Whether a lien claimant is the holder of a "secured claim" or an "unsecured claim" depends, thanks to § 506(a), on whether the claimant's security interest has any actual "value;"

— If a claimant's lien on the debtor's homestead has a positive value, no matter how small in relation to the total claim, the claimant holds a "secured claim" and the claimant's contractual rights under the loan documents are not subject to modification by the Chapter 13 plan;

— If a claimant's lien on the debtor's homestead has no value at all, on the other hand, the claimant holds an "unsecured claim" and the claimant's contractual rights are subject to modification by the plan.

*Lane*, 280 F.3d at 669.

Having determined that a debtor may generally strip off a wholly unsecured lien on his principal residence, we now analyze whether such lien avoidance is available when the debtor is ineligible for a Chapter 13 discharge.

## II.    Strip Off Where Debtor is Ineligible for a Discharge Under 11 U.S.C. § 1328(f)(1)

Commonly, a Chapter 13 debtor receives a discharge at about the same time he completes his obligations under his Chapter 13 plan.  11 U.S.C. § 1328(a) ("as soon as practicable after completion by the debtor of all payments under the plan . . . the

court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title"); *In re Okosisi*, 451 B.R. 90, 94-95 (Bankr. D. Nev. 2011) (explaining lien avoidance in a typical Chapter 13 case). In many lien stripping cases, the wholly unsecured lien is, thus, avoided at the time the debtor completes his plan payment and obtains his discharge. In this case, we consider whether a debtor may still avoid a wholly unsecured lien on his principal residence if he is not eligible for a Chapter 13 discharge.

When a debtor obtains a Chapter 7 discharge and files a Chapter 13 case in such close proximity to his Chapter 7 case that he is ineligible for a Chapter 13 discharge under § 1328(f)(1), the situation is commonly referred to as a "Chapter 20."

A Chapter 7 debtor's discharge, standing alone, does not deprive a mortgagee of its right to collect its debt *in rem*. 11 U.S.C. § 524(a)(2) ("A discharge . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a *personal liability* of the debtor") (emphasis added)); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim - namely, an action against the debtor *in personam* - while leaving intact another - namely, an action against the debtor *in rem*."). In his Chapter 13 case, a Chapter 20 debtor who is ineligible for a discharge under § 1328(f)(1) may seek to strip off a mortgagee's lien that remained in place following his Chapter 7 discharge.[6]

The Debtor concedes that his Chapter 7 case was filed within 4 years of his Chapter 13 case, that he obtained a discharge in his Chapter 7 case, and that he is

---

[6]    In *Harmon v. U.S.*, 101 F.3d 574, 581-82 (8th Cir. 1996), the Eighth Circuit explained that even in Chapter 7 cases, liens often do not pass through bankruptcy unaffected. In this case, the Debtor admits that the second and third liens on his home survived his Chapter 7 discharge.

ineligible for a discharge in his Chapter 13 case.  11 U.S.C. §1328(f)(1).[7]  He also admits that the junior lienholders' liens survived his Chapter 7 discharge and that they were to receive no payment through his original Chapter 13 plan.  Nevertheless, the Debtor argues that his ineligibility for a Chapter 13 discharge does not prevent him from stripping off the junior lienholders' liens.

Courts disagree regarding whether a debtor's ineligibility for a discharge bars him from using § 1322(b)(2) to permanently strip off an otherwise wholly unsecured lien on his principal residence.  Some courts say that a debtor's eligibility for a discharge is not a requirement for lien avoidance.  *See, e.g., Jennings,* --- B.R. ---, 2011 WL 2909888 (Bankr. N.D. Ga. July 11, 2011); *Okosisi,* 451 B.R. 90; *Fair*, 450 B.R. 853 (E.D. Wis. 2011); *In re Waterman*, 447 B.R. 324 (Bankr. D. Colo. 2011);  *In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010); *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010).  Other courts say that a debtor cannot permanently strip off a lien on his principal residence if he is ineligible for a discharge.  *See, e.g., In re Victorio,* --- B.R. ---, 2011 WL 2746054 (Bankr. S.D. Cal. 2011)*; In re Gerardin,* 447 B.R. 342 (Bankr. S.D. Fla. 2011); *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010); *In re Mendoza,* No. 09-22395 HRT, 2010 WL 736834 (Bankr. D. Col. Jan. 21, 2010); *In re Jarvis,* 390 B.R. 600, 604-06 (Bankr. C.D. Ill. 2008).

We hold that the strip off of a wholly unsecured lien on a debtor's principal residence is effective upon completion of the debtor's obligations under his plan, and it is not contingent on his receipt of a Chapter 13 discharge.

---

[7]     Section 1328(f)(1) provides, in pertinent part, that:

> (f) . . . the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge -
>> (1) in a case filed under chapter 7 . . . of this title during the 4-year period preceding the date of the order for relief under this chapter.

11 U.S.C. §1328(f)(1).

As some courts have recognized, nothing in the Bankruptcy Code conditions a Chapter 13 debtor's ability to modify a wholly unsecured creditor's lien under § 1322(b)(2) on his eligibility for a discharge. *See, e.g., Tran*, 431 B.R. at 235 (citing various Bankruptcy Code provisions and concluding that the Bankruptcy Code does not "preclude[] a debtor that is not eligible for a discharge from filing a chapter 13 case, obtaining confirmation of a chapter 13 plan, and with the exception of the right to a discharge, from enjoying all the rights of a chapter 13 debtor, including the right to strip off liens."); *Waterman*, 447 B.R. at 328-29 (finding the reasoning and analysis in *Tran* and other cases allowing strip offs in no-discharge Chapter 13 cases to be "persuasive and compelling"). For example, §1325 does not include eligibility for a discharge as a requirement for confirmation of a plan. *Tran,* 431 B.R. at 235 ("[A]lthough § 1325(a) and (b) sets forth numerous requirements for confirmation of a chapter 13 plan, nothing in § 1325 conditions confirmation on the debtor being eligible for a discharge.").

As support for her position, the Chapter 13 trustee cites to § 1325(a)(5), which provides, in pertinent part, for confirmation of a Chapter 13 plan if:

(5) with respect to each *allowed secured claim* provided for by the plan -

(A) the holder of such claim has accepted the plan;[8]

(B)(i)　the plan provides that -

(I) the holder of such claim retain the lien securing such claim until the earlier of -

(aa) the payment of the underlying debt . . . ; or

(bb) discharge under section 1328. . .; and

---

[8]　Even if § 1325(a)(5) applied to a wholly unsecured claim, in the Debtor's case, the junior lienholders did not object to confirmation of the Debtor's original plan that proposed to strip off their liens.

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law. . . or

. . .

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5) (emphasis added).

Section 1325(a)(5), including its specific subsection that was cited by the Chapter 13 trustee, § 1325(a)(5)(B)(i)(I)(bb), does not apply in the case of a wholly unsecured lien on a debtor's principal residence. *Hill*, 440 B.R. at 183 ("Section 1325(a)(5) has no applicability to unsecured claims. . . ."). The requirements under §1325(a)(5) only apply when there is value in the collateral to support the lienholder's claim; the plain language of that section specifies that it applies to an "*allowed secured claim.*" 11 U.S.C. § 1325(a)(5) (emphasis added). As we explained, *Nobleman* instructs us to first look to § 506(a) to classify the claim as secured or unsecured. *See Nobleman*, 508 U.S. at 328. In *Nobleman*, "the bank [wa]s still the 'holder' of a 'secured claim,' *because petitioner's home retain[ed] $23,500 of value as collateral.*" 508 U.S. at 329 (emphasis added). Where the collateral retains no value to support the lienholder's claim, like in this case, a creditor does not have a secured claim and the requirements of §1325(a)(5) do not apply. *See In re Frazier*, 448 B.R. 803, 811 (Bankr. E.D. Cal. 2011) ("A creditor entitled to assert the provisions of 11 U.S.C. § 1325(a)(5) must be the holder of an "allowed secured claim." A "secured claim" is a term of art under the Bankruptcy Code, . . . and is the secured claim determined pursuant to § 506(a)."). The Eighth Circuit's analysis in *Harmon v. U.S.*, 101 F.3d 574, 583 (8th Cir. 1996), further supports our position. The court in *Harmon* examined the phrase "allowed secured claim" in §1225(a)(5), a Bankruptcy Code section containing language similar to the relevant language found in §1325(a)(5), and "conclud[ed] that 'allowed secured claim' in §1225(a)(5) must be

interpreted by reference to the bifurcation of claims into secured and unsecured claims by §506(a)." 101 F.3d at 583.

As unsecured claimholders, the two junior lienholders are entitled to have their claims treated like the claims of other nonpriority unsecured claimholders in the Debtor's bankruptcy case. *See* 11 U.S.C. §1325(a)(4). The Debtor may strip off their liens upon completion of his plan, but he must still treat their claims. The second and third lienholders are, thus, entitled to a pro rata share of the distribution made to other unsecured creditors. *See Hill*, 440 B.R. at 183 (creditor whose lien is stripped is a holder of unsecured claim under §1325(b)(4), entitled to its pro rata share with other unsecured creditors); *Jennings*, 2011 WL 2909888, at \*5 (creditors must be treated as unsecured claimholders where their claims were allowed and unsecured).

We see no merit in the argument made by the Chapter 13 trustee and cases saying that allowing a strip off in a "no discharge" Chapter 20 case amounts to allowing the debtor a "de facto discharge." *See, e.g.*, *Fenn*, 428 B.R. at 500 (saying that allowing a permanent strip off of a junior mortgage lien after the debtor completes the plan in a case where the debtor is not eligible for a discharge "results in a de facto discharge") (citation omitted); *but see, e.g., Fair,* 450 B.R. at 857 ("[I]t is inaccurate to characterize lien stripping as a de facto discharge under the bankruptcy code."). By seeking to strip off a junior lien, a debtor seeks to do just that: avoid the lien. He does not seek a discharge.[9] In addition, nothing in § 1328(f)(1), the provision barring a Chapter 20 debtor's discharge, limits the debtor's rights under § 1322(b)(2). *See Okosisi,* 451 B.R. at 101 (§1328(f) only prohibits discharge and court would not read further restrictions into this section).

Our decision that: (1) the Bankruptcy Code permits a Chapter 13 debtor to strip off a wholly unsecured lien; and (2) a debtor's ability to strip off a lien is effective upon completion of his obligations under his plan, rather than on his receipt of a

---

[9] The strip off of a lien under § 1322(b)(2) is not the equivalent of receiving a discharge. As was previously explained, a discharge releases a debtor's *in personam* liability, but it does not affect the lien. *See* 11 U.S.C. § 524(a) and *Johnson*, 501 U.S. at 84. A strip off avoids the lien, thus extinguishing a creditor's ability to proceed against the debtor *in rem*.

discharge, does not amount to a conclusion that the Debtor's original plan should have been confirmed. We instruct the Debtor to amend his plan to provide for proper treatment of the junior lienholders' claims as unsecured nonpriority claims. And it is for the bankruptcy court to consider whether the Debtor's plan complies with the additional requirements for confirmation.

## CONCLUSION

For the foregoing reasons, we REVERSE the decision of the bankruptcy court and REMAND this case to the bankruptcy court for further proceedings consistent with this opinion.

---