# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3119

_____

| | | |
|---|---|---|
| In re: Michael James Fisette, | * | |
| | * | |
| Debtor. | * | |
| ------------------------------------------------- | * | |
| Michael James Fisette, | * | |
| | * | |
| Debtor- Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| Jasmine Z. Keller, | * | |
| | * | |
| Trustee- Appellant, | * | |
| ------------------------------------------------- | * | |
| TCF National Bank; Minnesota | * | |
| Bankers Association, | * | |
| | * | |
| Amici on Behalf of Appellant. | * | |

_____

Submitted: May 15, 2012
Filed: September 12, 2012

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

The bankruptcy court denied confirmation of debtor Michael Fisette's initial Chapter 13 plan because it proposed to "strip off" second and third mortgage liens on

his residence. Fisette filed a modified plan that preserved those liens, noting his objection, and appealed the bankruptcy court's confirmation of the modified plan to the Bankruptcy Appellate Panel ("BAP"). The BAP reversed, concluding that a Chapter 13 debtor may strip off a wholly unsecured residential mortgage lien,[1] addressing additional issues, and remanding to the bankruptcy court to consider whether Fisette's plan complies with the other confirmation requirements. In re Fisette, 455 B.R. 177 (BAP 8th Cir. 2011). The trustee appeals, supported by TCF National Bank and the Minnesota Bankers Association as *amici curiae*. We dismiss the appeal for lack of jurisdiction because the BAP's remand order is not a final order for purposes of 28 U.S.C. § 158(d)(1).

## I.

Fisette's homestead is subject to three mortgage liens. The amounts of the scheduled secured claims, in order of seniority, are $176,312, $89,914, and $48,552, well in excess of the homestead's appraised value of $145,000. A Chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*" 11 U.S.C. § 1322(b)(2) (emphasis added). In a Chapter 13 case, if this anti-modification proviso does not protect a secured claim, "lien-stripping is permissible." Harmon v. United States ex rel. Farmers Home Admin., 101 F.3d 574, 582 (8th Cir. 1996); see 11 U.S.C. §§ 1322(b)(2), 1327(c). Fisette's original plan proposed to strip off the second and third residential mortgage liens because "there is no equity in the debtor's residential real property . . . over and above the first mortgage." The bankruptcy court refused to confirm the plan, commenting that "the law in this jurisdiction clearly does not allow the debtor to strip the second and third mortgage

---

[1]"The term 'lien stripping' refers to a debtor's ability to reduce an undersecured creditor's claim to the present value of its collateral through claim valuation under 11 U.S.C. § 506(a) and (d)." Victorio v. Billingslea, 470 B.R. 545, 551 (S.D. Cal. 2012).

secured only by a lien on the debtor's homestead." On appeal of the subsequent order confirming the debtor's involuntarily modified plan, the BAP reversed, concluding -- consistent with six other circuits that have considered the issue -- that a Chapter 13 debtor may strip off junior liens on his primary residence if the liens are wholly unsecured claims in the bankruptcy case because the value of the home is less than the amount of the senior mortgage debt.[2]

The BAP then turned to two additional issues brought into play by this ruling. Fisette is ineligible for a Chapter 13 discharge because he filed a voluntary Chapter 13 petition shortly after receiving a Chapter 7 discharge. See 11 U.S.C. § 1328(f)(1). This sequence of filings is commonly known as a "Chapter 20." First, the BAP held that a Chapter 20 debtor may strip off residential liens that have become unsecured claims in the Chapter 13 case due to a decline in the homestead's value, rejecting the trustee's argument that 11 U.S.C. § 1325(a)(5)(B)(i)(I) precludes lien-stripping by a debtor ineligible for a Chapter 13 discharge. See generally Assocs. Commercial Corp.

---

[2]See In re Zimmer, 313 F.3d 1220, 1226-27 (9th Cir. 2002); In re Lane, 280 F.3d 663, 669 (6th Cir. 2002); In re Pond, 252 F.3d 122, 127 & n.5 (2d Cir. 2001); In re Tanner, 217 F.3d 1357, 1360 (11th Cir. 2000); In re Bartee, 212 F.3d 277, 291 (5th Cir. 2000); In re McDonald, 205 F.3d 606, 610-12 (3d Cir.), cert. denied, 531 U.S. 822 (2000); accord In re Millard, 404 F. App'x 804 (4th Cir. 2010) (unpublished), aff'g 414 B.R. 73 (D. Md. 2009); In re Griffey, 335 B.R. 166, 170 (BAP 10th Cir. 2005); In re Mann, 249 B.R. 831, 840 (BAP 1st Cir. 2000). See also 8 Collier on Bankruptcy ¶ 1322.06[1][a][i] (16th ed. 2012); Lundin & Brown, Chapter 13 Bankruptcy § 128.1, ¶¶ 1, 10-11 (4th ed. rev. Nov. 4, 2011). But see In re Dickerson, 222 F.3d 924, 926 (11th Cir. 2000) (following but disagreeing with the circuit's prior decision in Tanner), cert. denied, 532 U.S. 972 (2001). The issue turns on the interplay between 11 U.S.C. § 506(a)(1), which determines whether an "allowed claim of a creditor secured by a lien on property" is a "secured claim," and the anti-modification provision in § 1322(b)(2). In Nobelman v. Am. Sav. Bank, 508 U.S. 324, 329-32 (1993), the Supreme Court held that the anti-modification provision protects the entire claim of a junior residential mortgagee whose claim is *partially* secured by a lien on the homestead's reduced market value. These cases, on the other hand, involved allowed but *wholly* unsecured lien claims.

v. Rash, 520 U.S. 953, 957 (1997); 8 Collier on Bankruptcy ¶ 1325.06[3][a]. This issue has divided bankruptcy courts. See In re Miller, 462 B.R. 421, 428-29 (Bankr. E.D.N.Y. 2011), citing cases on both sides of the debate. It apparently has not been addressed by any circuit court.

Second, the BAP held that, "[a]s unsecured claimholders, the two junior lienholders are entitled to have their claims treated like the claims of other nonpriority unsecured claimholders." Therefore, the BAP instructed Fisette on remand "to amend his plan to provide for proper treatment of the junior lienholders' claims as unsecured nonpriority claims." This ruling finds support in a number of prior bankruptcy and district court decisions. See Victorio, 470 B.R. at 556-57; In re Jennings, 454 B.R. 252, 258 (Bankr. N.D. Ga. 2011); In re Okosisi, 451 B.R. 90, 98-99 n.8 (Bankr. D. Nev. 2011); In re Hill, 440 B.R. 176, 184 (Bankr. S.D. Cal. 2010). Compare In re Quiros-Amy, 456 B.R. 140, 147 (Bankr. S.D. Fla. 2011), criticizing the BAP's analysis. The trustee then appealed all three rulings.

## II.

If the BAP had upheld the modified plan confirmed by the bankruptcy court, its order would be final and appealable to this court under § 158(d). In re Zahn, 526 F.3d 1140, 1143 (8th Cir. 2008). We would then have jurisdiction to review all issues the trustee has appealed. But the BAP did not affirm. It reversed the bankruptcy court's threshold ruling, addressed additional issues, and remanded "for the bankruptcy court to consider whether the Debtor's plan complies with the additional requirements for confirmation." 455 B.R. at 187. When the BAP remands "for further judicial activity that is likely to affect the merits of the controversy," we lack jurisdiction under § 158(d). In re Dorholt, Inc., 224 F.3d 871, 874 n.1 (8th Cir. 2000) (quotation omitted). In Lewis v. United States Farmers Home Admin., 992 F.2d 767, 772 (8th Cir. 1993), for example, we held that a bankruptcy order that neither confirms a plan nor dismisses the petition is not final "when the bankruptcy court

-4-

must exercise considerable further discretion." All of the attorneys involved in this appeal have ignored that fundamental, well-established principle.

In this case, "further judicial activity" by the bankruptcy court will be needed to finally resolve both of the additional "Chapter 20" issues addressed by the BAP. First, though the BAP ruled that ineligibility for a discharge does not prevent a Chapter 20 debtor from stripping off junior mortgagee liens, the BAP did not address a subsidiary issue that has troubled many bankruptcy courts -- the circumstances in which the Chapter 20 debtor's use of this device complies with the requirement that a chapter 13 plan "has been proposed in good faith." 11 U.S.C. § 1325(a)(3); see, e.g., In re Scotto-Diclemente, 459 B.R. 558, 568-70 (Bankr. D.N.J. 2011). The bankruptcy court's obvious concern when advised at the first confirmation hearing that the debtor proposed to strip off the junior mortgagees' liens but pay them nothing under the plan suggests that good faith may be a serious issue.

Second, the BAP's initial disposition of the second Chapter 20 issue -- that junior lienholders with unsecured claims may share pro rata in plan distributions to unsecured creditors -- raises related issues that must be resolved on remand. Fisette's Chapter 7 case discharged his *in personam* liability to the junior mortgagees for the underlying mortgage debt. But the liens survived and provide the junior mortgagees "allowed [*in rem*] claims" in the Chapter 13 case. See 11 U.S.C. §§ 502(b)(1), 506(a), 524(a); Johnson v. Home State Bank, 501 U.S. 78, 84 (1991). May Fisette strip off these liens when plan payments have been completed because of the claims' unsecured status in bankruptcy, but exclude the claimants from distributions made to the unsecured creditor class, as he proposed in the initial Chapter 13 plan? If not, as the BAP initially ruled, including those claims will substantially increase the $4,922 in unsecured creditor claims the original plan proposed to pay in full. This may make it more difficult for Fisette to satisfy the best interest of creditors test, § 1325(a)(4), and may trigger the "disposable income" requirements of § 1325(b)(1)(B). The resulting dilemma casts doubt on the likelihood the debtor's original Chapter 13 plan,

-5-

and perhaps any plan, can be confirmed.  See  In re Dang, 467 B.R. 227, 237-38 (Bankr. M.D. Fla. 2012); In re Gounder, 266 B.R. 879, 881 (Bankr. E.D. Cal. 2001). The bankruptcy court's need to work through these difficult issues on remand is clearly "further judicial activity that is likely to affect the merits of the controversy."

On November 14, 2011, with the trustee's appeal pending in this court, and six days after the trustee filed an opening brief challenging all three rulings, the BAP, without explanation, "revised" its opinion to "remove" the language resolving the third issue and the instruction that Fisette amend his original Chapter 13 plan accordingly.[3]  The general rule is that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).  However, when an appeal is invalid because the order being appealed was not final, the district court (or the BAP, which is an alternative forum for interlocutory bankruptcy appeals) "may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction."  Ruby v. Sec'y of the Navy, 365 F.2d 385, 389 (9th Cir. 1966), cited approvingly in Griggs.  That is obviously the authority the BAP exercised in revising its order in this case, demonstrating that the BAP knew, as we have now concluded, that its original order was non-final.  It is unfortunate that the BAP did not explain that it was revising an interlocutory order, because that would have eliminated the likelihood that jurisdictionally-careless attorneys would continue to waste our time and theirs with this appeal.

The appeal is dismissed for lack of jurisdiction.

_____

---

[3]West's Bankruptcy Reporter published the revised opinion listing the original date, August 29, 2011, without noting the BAP's revision.