PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13 2000
THOMAS K. KAHN
CLERK

No. 99-11895

_____

D.C. Docket No. 98-00916-CIV-ORL-22

In Re:

PAMELA L. TANNER,

Debtor.

--------------------------------------------------------------------------------------------

PAMELA L. TANNER,

Plaintiff-Appellant,

versus

FIRSTPLUS FINANCIAL, INC., f.k.a.
Remodelers National Funding,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 13, 2000)**

Before BLACK, CARNES and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In the wake of <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 113 S. Ct. 2106 (1993), in which the Supreme Court held that the rights of an undersecured homestead lender are protected from modification in Chapter 13 bankruptcy proceedings, we address whether this holding extends to wholly unsecured homestead lenders.[1]  We conclude that it does not.

## I.  BACKGROUND AND PROCEDURAL HISTORY

In the fall of 1995, Plaintiff-Appellant Pamela Tanner ("Debtor") purchased her primary residence for $62,000.00 which was financed entirely by a mortgage from Inland Mortgage Co. ("Inland Mortgage").  The following spring, Debtor obtained a debt consolidation and home improvement loan from Defendant-Appellee FirstPlus Financial, Inc. ("FirstPlus")[2] in the amount of $23,000.00.  Both mortgages were secured solely by Debtor's residence.  When Debtor subsequently filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September

---

[1] In this context, an undersecured lender is one for whom the value of the underlying collateral has fallen below the amount of the loan, and an unsecured lender is one for whom no equity in the collateral supports its loan.  Both types of lenders are therefore secured creditors only in the sense that a security interest in collateral has been given to them by the debtor in exchange for their loans.

[2] FirstPlus was formerly known as Remodelers National Funding Corp.

17, 1997, her home was valued at $62,000.00.[3] Inland Mortgage filed proof of its secured claim for the existing balance of $62,880.01 on the senior mortgage, and FirstPlus filed its secured claim of $22,968.65 for the junior mortgage. Debtor's proposed Chapter 13 plan contemplated paying Inland Mortgage in full and treating FirstPlus's claim as an unsecured claim entitled to a six-percent dividend. Pursuant to that end, Debtor filed an adversary complaint in which she requested that the bankruptcy court value FirstPlus's interest in the residence at $0 and then "strip off" the lien as unsecured.[4] In its motion to dismiss, FirstPlus argued that it was a secured creditor and that Debtor therefore could not "strip off" its claim. The bankruptcy court, agreeing with FirstPlus, granted the motion to dismiss and the district court affirmed. This appeal followed.

## II. DISCUSSION

Debtor challenges the bankruptcy court's holding that FirstPlus's claim was a secured claim immune from modification in her Chapter 13 plan. We review the bankruptcy court's findings of fact for clear error and the legal conclusions of the

---

[3] Although the parties stipulated to this amount for purpose of the motion to dismiss, FirstPlus contends that it would dispute the value of the home on remand. This does not change the nature of the legal issue before us, however, because the bankruptcy and district courts' decisions were based on a stipulation that FirstPlus's claim was wholly unsecured.

[4] In bankruptcy parlance, a "strip down" of an undersecured lien reduces it to the amount of its extant collateral and a "strip off" removes an unsecured claim in its entirety.

3

bankruptcy and district courts *de novo*.  See Southeast Bank Corp. v. State of Fla.,

Dep't of Revenue (In re Southeast Bank Corp.), 97 F.3d 476, 478 (11th Cir. 1996).

This appeal lies at the intersection of two provisions of the bankruptcy code:

11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2).  Section 506(a) defines the secured

and unsecured components of debts according to the value of the underlying

collateral:

> An allowed claim of a creditor secured by a lien on property in which the
> estate has an interest . . . is a secured claim to the extent of the value of
> such creditor's interest in the estate's interest in such property, . . . and
> is an unsecured claim to the extent that the value of such creditor's
> interest or the amount so subject to setoff is less than the amount of such
> allowed claim.

11 U.S.C. § 506(a) (1999).

Section 1322(b)(2) permits a Chapter 13 debtor's plan to "modify the rights

of holders of secured claims, other than a claim secured only by a security interest

in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2)

(1999).  The Supreme Court considered the interplay of these two provisions in

Nobelman v. American Savings Bank, 508 U.S. 324, 113 S. Ct. 2106 (1993), in

which the debtor sought to "strip down" the homestead lender's secured claim of

$71,335.00 to the home's reduced value of $23,500.00.  The Court foreclosed this

option by holding that "§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on

§ 506(a) to reduce an undersecured homestead mortgage to the fair market value of

4

the mortgaged residence."  508 U.S. at 325-26, 113 S. Ct. at 2108.[5]

Acknowledging that section 506(a) allows bifurcation of claims into secured and unsecured components, the Court nevertheless concluded that the most sensible interpretation of section 1322(b)(2) was that it protected even the unsecured components of a partially secured claim.  See Nobelman, 508 U.S. 330-32, 113 S. Ct. at 2111.  The concurring opinion found this result also comported with Congress's intent.  See id. at 332, 113 S. Ct. at 2112 (Stevens, J., concurring) (Section 1322 (b)(2)'s "legislative history indicate[s] that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market.").

The Nobelman Court left open the issue before us in this appeal, that is, whether its holding extends to wholly unsecured homestead mortgages.  Subsequent consideration of this issue has sharply divided bankruptcy and district courts, see 5 Norton Bankruptcy Law and Practice 2d § 121:5, nn. 57 & 57.5 (2000) (citing cases), and bankruptcy scholars, compare 8 Collier on Bankruptcy § 1322.06 (Lawrence P. King ed., 15th ed. 2000) with Keith M. Lundin, Chapter

_____

[5] As part of the Bankruptcy Reform Act of 1994, Congress amended section 1322 to except short-term and balloon mortgages from the antimodification clause's reach, thereby overruling Nobelman insofar as it applied to these types of mortgages.  See 8 Collier on Bankruptcy § 1322.16 (Lawrence P. King ed., 15th ed. 2000).  This amendment does not affect our disposition of this appeal.

5

14 Bankruptcy, § 4.46 (2d ed. 1994). This split is understandable in light of the seemingly contradictory language used in Nobelman, dividing the courts into two interpretive camps. The majority view has focused on the following language to support its conclusion that the antimodification provision protects only undersecured, and not wholly unsecured, homestead lenders: "even if we accept petitioners' valuation [under § 506(a)], the bank is still the 'holder' of a 'secured claim,' because petitioners' home retains $23,500 of value as collateral." Nobelman, 508 U.S. at 329, 113 S. Ct. 2110. Under this view, the antimodification protection afforded by section 1322(b)(2) applies only when the creditor's claim is at least partially secured.

The burgeoning minority view has instead relied on the Nobelman Court's emphasis on the "rights" of the homestead lender rather the valuation of its claim. See id. ("[D]etermination [that a claim is undersecured] does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim."). According to this interpretation, it is the status of the homestead lender, rather than the value of the collateral underlying the lender's claim, that shields its claim from modification.

Since this appeal was filed, two other courts of appeals have confronted this issue and adopted the majority view. The Third Circuit resolved the apparent tension in the Nobelman decision as follows:

> Perhaps the clearest explanation of how the Court's discussion of the two sections can be reconciled is to point out that while the antimodification clause uses the term "claim" rather than "secured claim" and therefore applies to both the secured and unsecured part of a mortgage, the antimodification clause still states that the claim must be "secured only by a security interest in . . . the debtor's principal residence." If a mortgage holder's claim is wholly unsecured, then after the valuation that [the Court] said that debtors could seek under § 506(a), the bank is not in any respect a holder of a [secured claim] . . . and the antimodification clause does not apply. On the other hand, if any part of the bank's claim is secured, then, under [the Court]'s interpretation of the term "claim," the entire claim, both secured and unsecured parts, cannot be modified.

McDonald v. Master Fin. Inc. (In re McDonald), 205 F.2d 606, 611-12 (3d Cir. 2000) (quoting 11 U.S.C. § 1322(b)(2)) (citation and emphasis omitted), petition for cert. filed, 68 U.S.L.W. 3775 (U.S. June 7, 2000) (No. 99-1993). The Fifth Circuit agreed and drew further support from the legislative history of section 1322(b)(2) and public policy considerations favoring only those mortgage lenders involved with homestead purchases rather than home improvement or debt consolidation. See Bartee v. Tara Colony Homeowners Assoc. (In re Bartee), No. 99-20463, – F.3d – , (5th Cir. May 15, 2000).

7

Although this is a close issue, we find the reasoning of the Third and Fifth Circuits persuasive and adopt the majority view. We agree with those courts that the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence. See In re Bartee, In re McDonald, 205 F.3d at 611. Any claim that is wholly unsecured, however, would not be protected from modification under section 1322(b)(2). To hold otherwise and extend the anti-modification clause to even wholly unsecured claims would vitiate the Nobelman Court's pronouncement that "[debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." 508 U.S. at 328, 113 S. Ct. at 2110.

Contrary to FirstPlus's contention, this holding does not derogate the protected rights alluded to by the Nobelman Court, but rather recognizes that only the rights secured by some remaining equity will be protected from modification. Indeed,

> [a]n analysis of the state law "rights" afforded a holder of an unsecured "lien", if such a situation exists, indicates these rights are empty rights from a practical, if not a legal, standpoint. A forced sale of the property

8

would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing.

Lam v. Investors Thrift (In re Lam), 211 B.R. 36, 40 (9th Cir. B.A.P. 1997), appeal dismissed, 192 F.3d 1309 (9th Cir. 1999). Extending section 1322(b)(2)'s protection to wholly unsecured junior mortgages would enlarge the rights afforded to those lenders when the mortgagors are forced to file a Chapter 13 petition, inviting unwelcome, and certainly unintended, consequences. See id. at 41. The better reading of sections 506(a) and 1322(b)(2), therefore, protects only mortgages that are secured by some existing equity in the debtor's principal residence.

## III. CONCLUSION

We REVERSE the district court's judgment affirming the bankruptcy court's decision.