**In re John B. GILPIN and Jennie M. Gilpin, Debtors.**

**No. 8:09–BK–24646–CPM.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 24, 2011.

Glenn E Gallagher, Lauren Osa, Robert Murphy, Clark & Washington LLC, Tampa, FL, for Debtors.

Jon Waage, Bradenton, FL, Trustee.

## ORDER ON MOTION TO STRIP LIEN AND DETERMINE SECURED STATUS OF WELLS FARGO

ALEXANDER L. PASKAY, Bankruptcy Judge.

**THE MATTER** under consideration before the Court is a Motion to Strip Lien and Determine Secured Status of Wells Fargo Financial System Florida, Inc. (Doc. 34) filed by John B. Gilpin and Jennie M. Gilpin (the "Debtors"). In the motion, the Debtors seek to invalidate the lien of Wells Fargo Financial System Florida, Inc. ("Wells Fargo"), in the form of a second mortgage on the Debtors' home. At issue in this case is the proper valuation of the Debtors' home.

The relevant facts are as follows. The Debtors filed a Petition for Relief under Chapter 13 on October 29, 2009 (the "Petition Date"). The schedules filed along with the Petition reflect that the Debtors have an interest in real property located at 4310 Honeybell Ridge Court in Valrico, Florida (the "Debtors' home"), and that

this property is secured by two mortgages. The first mortgage holder is identified as Countrywide Home Lending, and the parties have stipulated that the debt owed on this first mortgage is $192,279.12 as of the Petition Date. The second mortgage holder is Wells Fargo, and the parties have stipulated that, as of the Petition Date, the debt owed on this second mortgage is $92,176.97. The Debtors' Chapter 13 plan, which was filed on the Petition Date, indicates that the Debtors intend to continue paying the first mortgage on their home and to avoid or "strip" the lien held by Wells Fargo.

■ The treatment of Wells Fargo's lien depends upon the value of its collateral, the Debtors' home. Under § 506(a) of the Bankruptcy Code, an allowed claim of a creditor secured by a lien on property in which the estate has an interest is a *secured* claim to the extent of the value of such creditor's interest in the estate's interest in the property and is an *unsecured* claim to the extent the value of such creditor's interest is less than the amount of such allowed claim. 11 U.S.C. § 506 (emphasis added). In other words, a secured claim in bankruptcy is only secured to the extent of the value of the collateral.

■ In a Chapter 13 case, § 1322(b) prevents modification of the rights of the holder of a claim "secured only by security interest in real property that is the debtor's primary residence." 11 U.S.C. § 1322(b)(2). Consequently, a mortgage lien secured only by a Chapter 13 debtor's primary residence cannot be bifurcated, or "stripped down," under § 506. But, if the mortgage lien on a primary residence is a junior lien and the value of the collateral securing it is less than the amount owed on the superior lien, the junior lien is wholly unsecured. Therefore, the anti-modification protection afforded to *secured* claims under § 1322(b)(2) does not apply, and the wholly unsecured junior lien can be "stripped off." *See, Tanner v. FirstPlus Financial, Inc.,* 217 F.3d 1357, 1360 (11th Cir.2000).

In the present case, the Debtors' home serves as their primary residence. Thus, if the Court finds that the value of the Debtors' home is less than the debt owed on the senior loan, Wells Fargo's junior lien can be stripped off and Wells Fargo will be left with a wholly unsecured claim. Conversely, if the Court determines the value of the Debtors' home exceeds the debt owed to the senior lien holder, Wells Fargo's lien rides through the bankruptcy unaffected by those proceedings.

To determine the proper treatment of Wells Fargo's lien, the Court must begin by identifying the correct date upon which to value the Debtors' home. The Debtors assert that the correct date for valuation is the date of confirmation. Wells Fargo, on the other hand, argues that the court should look to the value of the Debtors' home as of the Petition Date. With regard to the date of valuation, subparagraph (a)(2) of § 506 expressly states that if the debtor is an individual in a Chapter 13 case, value with respect to personal property shall be determined "as of the date of the filing of the petition." However, § 506 fails to establish a similar express date for determining the value of real property. Instead, subparagraph (a)(1) of § 506 states that for purposes of determining secured status, value "shall be determined in light of the *purpose of the valuation* and *of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1) (emphasis added).

A split of authority exists regarding the appropriate valuation date when a court is deciding whether to strip off a lien in a Chapter 13 case. *See, In re Valls,* 2010

WL 2745951 (Bankr.S.D.Fla. July 6, 2010) (not published) and cases cited therein. In *In re Valls,* a case out of the Southern District of Florida, the court considered a motion to strip off a junior mortgage lien on the debtor's homestead based on allegations that the junior lien was wholly unsecured. Because the debtor sought to keep his home, the court found it appropriate to use the petition date as the relevant valuation date. In support of its position, the court cited *In re Dean,* 319 B.R. 474 (Bankr.E.D.Va.2004) and *In re Young,* 390 B.R. 480, 488 (Bankr.D.Me.2008). *In re Valls, supra.*

In *In re Dean,* the court focused on the debtor's *proposed disposition or use* of the collateral to be valued, as being the operative phrase in § 506(a). The court found that the legislative history of § 506(a) calls for permitting different valuations depending on the debtor's use of the property as revealed to the court during the bankruptcy proceedings. *In re Dean, supra,* 319 B.R. at 477. The debtors in that case intended to continue to use the collateral as their primary residence, to provide shelter for the debtors and their dependents. The debtors intent was established at the onset of the case and had not changed. Thus, under these facts, the court found that it need not wait until the confirmation date to determine the debtors' use of the property at issue. *Id.* at 478. The court contrasted this scenario with one under which a debtor might decide to reside in property previously rented to tenants, in which case, rental income would no longer be an appropriate valuation factor. *Id.*

The court in *In re Young* also looked to the petition date as the proper date to value property when considering a Chapter 13 debtor's motion to strip a junior lien, where the debtors intended to keep their home. In that case, neither party pressed for use of a different valuation date. The court noted, however, that the petition date is the appropriate time for determining the value of the debtors' home because the estate's interest in property (with exceptions not relevant to the case) is established upon the commencement of the bankruptcy case. *In re Young, supra,* 390 B.R. at 488.

Many courts recognize the petition date as the "watershed date" of the bankruptcy proceeding—the date upon which "creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions are determined." *In re Dean, supra,* 319 B.R. at 479, *citing, In re Johnson,* 165 B.R. 524, 528 (S.D.Ga.1994), *et al. See also,* 11 U.S.C. § 541(a)(1) (property of the estate is comprised of all legal or equitable interests of the debtor in property "as of the commencement of the case"); and 11 U.S.C. § 502(b) (after notice and hearing, the court shall determine the amount of an allowed claim "as of the date of the filing of the petition").

█ This Court finds most persuasive, under the facts of the present case where the Debtors intend to remain in their home, the line of cases followed in *In re Valls,* which hold that the petition date serves as the appropriate date for valuation. *See also, In re Dente/Pender,* 60 B.R. 164, 165 (Bankr.M.D.Fla.1986) (while valuation may be proper as of a date after the commencement of a case in certain circumstances, valuation must be made as of the date of commencement for the purpose of determining the extent of an allowed secured claim § 506). *But see, In re Roach,* 2010 WL 234959 (Bankr.W.D.Mo. 2010) (focusing on the *purpose of the valuation,* and finding that because the purpose is to determine appropriate plan treatment, value should be determined as of the effective date of the plan); and *In re Aubain,* 296 B.R. 624, 636 (Bankr.

E.D.N.Y.2003) (court should use a flexible approach, taking into consideration the purpose of the valuation as well as the equities involved).

Having determined that the Petition Date represents the appropriate date for valuation, the Court turns next to consideration of the evidence presented by the parties in this case. Each party presented the testimony of an expert real estate appraiser. Generally speaking, both experts used similar methodologies for determining value—they reviewed recent sales of comparable homes in the same vicinity as the Debtors' home and made adjustments to the sale prices based on the physical attributes of the homes and, in some case, the nature of the sales. The Debtors' expert, Dario Ruiz, submitted an appraisal report valuing the Debtors' home at $174,000 as of September 26, 2010. At the request of the Debtors' counsel, the Court also took judicial notice of information provided on the web site of the Hillsborough County Property Appraiser (the "County Appraiser") that reflects the Debtor's home being valued by the County Appraiser at $167,790 on October 9, 2009, and at $140,483 on December 6, 2010. Wells Fargo's expert, David Smith, submitted two appraisal reports, the first valuing the Debtors' home at $215,000 as of October 29, 2009, and the second valuing it at $220,000 as of April 10, 2010.

█ Because the Court finds the Petition Date is the proper date for valuation in this case, it looks to the appraisals made closest to the Debtors' Petition Date of October 29, 2009. The only evidence as to the value on or near the Petition Date offered by the Debtors is the County Appraiser's figure of $167,790 as of October 9, 2009. Both experts testified that the County Appraiser's values are substantially lower than true values and that they do not rely on the County Appraiser's values when preparing their professional appraisal reports. The Debtor's expert, Mr. Ruiz, testified that based on his experience, the County Appraiser's values are usually 20 to 30 percent below current market values. Wells Fargo's expert, Mr. Smith, testified that he no pays no attention to the values assigned by the County Appraiser because appraisals involves so many factors—like whether a property has been homesteaded, how long it has been on the market, what the amenities are—and it is impossible to tell what factors the County Appraiser relied upon. The Court concurs that the County Appraisal's figures fail to accurately reflect true market values. The Court, therefore, accepts the professional appraisal of Mr. Smith made closest to the Petition Date, which values the Debtors' home at $215,000 on October 29, 2009, as the most reliable appraisal. *See, In re Valls, supra,* 2010 WL 2745951, at *2 (court accepted the appraisal closest in time to the petition date as the most reliable).

Consequently, the Court concludes that because the value of the Debtors' home as of the Petition Date ($215,000) exceeds the amount owed to the senior mortgage holder ($192,279.12), the lien of Wells Fargo is partially secured. Wells Fargo's lien is, therefore, protected by the anti-modification provision of § 1322(b)(2), and not subject to avoidance under § 506(a)(1).

Accordingly:

**IT IS ORDERED, ADJUDGED AND DECREED** that the Debtor's Motion to Strip Lien and Determine Secured Status of Wells Fargo Financial System Florida, Inc. be, and the same is hereby, denied.