# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2447

_____

In re: Jamey Albert Schmidt; Keeley Ariel Schmidt,

*Debtors*,

------------------------------

Minnesota Housing Finance Agency,

*Appellant*,

v.

Jamey Albert Schmidt; Keeley Ariel Schmidt,

*Appellees*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 12, 2014
Filed: August 28, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Jamey and Keeley Schmidt filed for bankruptcy under Chapter 13 of the bankruptcy code. Chapter 13 allows individuals with regular income to adjust their debts through flexible repayment plans funded primarily from future income. *See* 8 *Collier on Bankruptcy* ¶ 1322.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013).

The bankruptcy court generally has authority to approve a debtor's Chapter 13 plan that modifies the rights of creditors. A plan may modify the rights of holders of unsecured claims; it also may modify the rights of holders of secured claims, "other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). In the bankruptcy context, a creditor's claim is a "secured claim" only to the extent of the value of the creditor's interest in the collateral that secures the claim. *Id.* § 506(a)(1).

This case involves a scenario in which a creditor holds a third mortgage that is secured only by the debtor's principal residence, but the value of the creditor's interest in the home is zero, because the value of the residence is insufficient to make whole the holders of the first and second mortgages. The question presented on this appeal is whether the debtor may engage in a practice known as "lien stripping," in which the debtor seeks to (1) have the creditor's claim reclassified from secured to unsecured, (2) modify the terms of the mortgage for the duration of the Chapter 13 plan, and (3) avoid the creditor's mortgage entirely upon discharge from bankruptcy. *See generally Harmon v. United States*, 101 F.3d 574, 582 (8th Cir. 1996).

The bankruptcy court[1] confirmed a Chapter 13 plan that reclassified the third-mortgage creditor's claim as unsecured and provided for avoidance of the creditor's

---

[1]The Honorable Nancy C. Dreher, late a United States Bankruptcy Judge for the District of Minnesota.

lien upon discharge. The district court[2] affirmed, and the third-mortgage holder appeals. Consistent with the decisions of all other circuits that have addressed the question, we affirm.

I.

In June 2012, the Schmidts filed for relief under Chapter 13 of the Bankruptcy Code. Their home, which has an appraised value of $140,000, is encumbered by three mortgages. The senior mortgage, in the amount of $154,578.20, is held by U.S. Bank Home Mortgage. The second-priority mortgage, also held by U.S. Bank Home Mortgage, is for $39,451.99. The Minnesota Housing Finance Agency holds the third-priority mortgage, in the amount of $26,469.31. The Schmidts' home is the only collateral that secures the debt owed to the Agency.

In November 2012, the Schmidts filed a "motion to value" in the bankruptcy court, seeking (1) a determination that there was no equity in their home to support the Agency's lien, (2) reclassification of the Agency's claim from secured to non-priority unsecured, and (3) avoidance of the Agency's lien upon the Schmidts' successful completion of their Chapter 13 plan. They also filed a modified Chapter 13 plan that treats the Agency as an unsecured creditor and requires the Agency's mortgage lien to be removed from the home upon the Schmidts' bankruptcy discharge.

The bankruptcy court, relying on *In re Fisette*, 455 B.R. 177 (B.A.P. 8th Cir. 2011), ruled in favor of the Schmidts. The court granted their motion to value and confirmed their modified plan on the ground that a bankruptcy debtor may strip off

---

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

a lien on the debtor's primary residence if there is no equity in the residence to support the lien. The Agency appealed both rulings to the district court.

The district court recognized that the "single legal issue presented by [the Agency's] appeals is whether a Chapter 13 debtor can strip off a lien on the debtor's principal residence if no equity exists to support the lien." The resolution of this issue, the court explained, turned on the interplay between § 506(a)(1) and the clause in § 1322(b)(2) that forbids a court to modify the rights of certain creditors who have a security interest in real property that is the debtor's principal residence.

The district court first noted that the Agency holds only an unsecured claim under § 506(a)(1), because no equity exists to support the Agency's lien: the value of the Schmidts' home is less than the amount owed on the more senior mortgages. Relying on *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), the district court concluded that "a residential mortgagee must hold a secured claim under § 506(a) . . . to qualify for protection under the anti-modification provision of § 1322(b)(2)." The district court ruled that the bankruptcy court did not err by allowing the Schmidts to avoid the Agency's wholly unsecured mortgage upon the successful completion of their modified Chapter 13 plan. Because the Agency does not hold a secured claim under § 506(a)(1), the court reasoned, the Agency's rights may be modified.

The Agency appeals. The relevant facts in this case are undisputed, and we review the bankruptcy court's conclusions of law *de novo*. *Ritchie Special Credit Invs., Ltd. v. U.S. Tr.*, 620 F.3d 847, 853 (8th Cir. 2010).

## II.

The issue here is whether a bankruptcy court may strip off a valueless lien in a Chapter 13 proceeding. Each of our sister circuits that has addressed this question

has answered in the affirmative. *See In re Davis*, 716 F.3d 331, 334–39 (4th Cir. 2013); *In re Zimmer*, 313 F.3d 1220, 1222–27 (9th Cir. 2002); *In re Lane*, 280 F.3d 663, 665–69 (6th Cir. 2002); *In re Pond*, 252 F.3d 122, 124–27 (2d Cir. 2001); *In re Tanner*, 217 F.3d 1357, 1358–60 (11th Cir. 2000); *In re Bartee*, 212 F.3d 277, 284–95 (5th Cir. 2000); *In re McDonald*, 205 F.3d 606, 609–15 (3d Cir. 2000).

Resolution of this appeal requires consideration of two statutes, 11 U.S.C. § 506(a)(1) and 11 U.S.C. § 1322(b)(2). Section 506(a)(1) divides a creditor's allowed claims against a debtor into secured and unsecured claims, based on the value of the underlying collateral. A creditor's claim is secured "to the extent of the value of [the] creditor's interest in . . . [the] property" and is unsecured "to the extent that the value of [the] creditor's interest . . . is less than the amount of [the creditor's] claim." 11 U.S.C. § 506(a)(1). That is, a creditor's undersecured claim is treated as a secured claim up to the value of the creditor's interest in the collateral; the excess debt is treated as an unsecured claim component. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 & n.3 (1989).

Section 1322(b)(2) governs permissible modifications of a creditor's rights. As relevant here, it governs the "strip off" of a lien, which occurs when "there being no collateral value for a mortgage, the entire lien is proposed to be avoided." *In re Fisette*, 455 B.R. at 179 n.1. Section 1322(b)(2) provides that a debtor's Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." We are concerned with the "other than" clause of § 1322(b)(2)—the "antimodification provision"—which protects certain claims from lien stripping.

The Supreme Court addressed the interplay of these two statutes in *Nobelman*. The debtors there sought to strip off the unsecured portion of a creditor's undersecured lien—the debtors owed the creditor $71,335 on their home, which was

valued at $23,500. 508 U.S. at 326. The Court explained that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Id.* at 328. Next, the Court observed that "the bank is indisputably the holder of a claim secured by a lien on [the debtors'] home," *id.*, "because [the debtors'] home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim componen[t]' under § 506(a)." *Id.* at 329 (second alteration in original) (quoting *Ron Pair Enters.*, 489 U.S. at 239 n.3).

The Court ultimately concluded that the debtors could not strip off the unsecured portion of the bank's undersecured lien:

> [T]o give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner [the debtors] propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

*Id.* at 332. The Court explained that the debtors "cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component." *Id.* at 331.

*Nobelman* held that as long as a creditor's lien is at least partially secured, § 1322(b)(2) precludes stripping any part of that lien. The Court had no occasion to address the question presented in this case: What result if the creditor's lien is wholly unsecured under § 506(a)(1) because the creditor's interest in the collateral that secures the lien has no value?

The Agency argues that because its lien is secured only by a security interest in the Schmidts' principal residence, § 1322(b)(2)'s antimodification provision

-6-

protects it. Section 1322(b)(2) governs when a bankruptcy court can "modify the rights of holders of secured claims" and the rights of "holders of unsecured claims." "Secured claim" and "unsecured claim" are terms of art in the Bankruptcy Code, so it is necessary first to consult § 506(a)(1) to determine which type of claim is involved. *Nobelman* "confirm[ed] that § 506(a) is the starting point in the analysis and is not rendered a nullity in the Chapter 13 context." *Bartee*, 212 F.3d at 286.

We agree with other circuits that when considering the rights of creditors who hold homestead liens, "the dividing line drawn by § 1322(b)(2) runs between the lienholder whose security interest in the homestead property has some 'value,' see § 506(a), and the lienholder whose security interest is valueless." *Lane*, 280 F.3d at 668. "Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value—after accounting for other encumbrances that have priority over the lien—so that the lien is at least partially secured under Section 506(a)." *Pond*, 252 F.3d at 126.

Although the Agency acknowledges that its claim is not a secured claim under § 506(a)(1), the Agency relies on *Nobelman*'s conclusion that the antimodification provision of § 1322(b)(2) protects against modification any "claim secured . . . by" a debtor's principal residence, not merely a "secured claim." 508 U.S. at 328. On that basis, the Agency contends that § 1322(b)(2)'s antimodification provision applies to *all* claims "secured only by a secured interest in . . . the debtor's principal residence," whether or not the claim is a secured claim under § 506(a)(1).

In our view, the Agency reads too much into *Nobelman*'s discussion on this point. Because the creditor's claim in *Nobelman* was partially secured, the Court was not concerned with whether § 1322(b)(2)'s antimodification provision applies regardless of a claim's status under § 506(a)(1). The question in *Nobelman* was whether § 1322(b)(2) permits bifurcating a partially secured claim and stripping the lien from the unsecured portion of that claim. *Nobelman* thus made clear that if a

creditor's claim is at least partially secured, none of the creditor's rights may be modified.

If, however, the creditor's claim is wholly unsecured, then the reasoning of *Nobelman* does not preclude modifying the creditor's rights under § 1322(b)(2). As the Third Circuit explained:

> If a mortgage holder's claim is wholly unsecured, then after the valuation that [the Court] said that debtors could seek under § 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence. The bank simply has an unsecured claim and the antimodification clause does not apply. On the other hand, if any part of the bank's claim is secured, then, under [the Court's] interpretation of the term "claim," the entire claim, both secured and unsecured parts, cannot be modified. We think this reading reconciles the various parts of the Court's opinion.

*McDonald*, 205 F.3d at 612; *see Lane*, 280 F.3d at 668–69 ("The implications of this portion of the *Nobelman* opinion . . . do not extend beyond the situation . . . in which the lienholder's claim for the amount due has both a secured component and an unsecured component."); *Bartee*, 212 F.3d at 288-89.

The Agency also relies on legislative history to support its contention, but as is often the case, the committee reports and floor statements arguably lend support to either side of the controversy. The Agency highlights a floor statement of a House manager in 1978 to argue that a creditor's claim secured only by a debtor's principal residence may not be avoided altogether. The House manager's statement expressed an intent that "a claim secured by the debtor's principal residence may be treated . . . under section 1322(b)(5)," which provides for a debtor to cure a pre-petition delinquency over time. 124 Cong. Rec. 32,409 (1978) (statement of Rep. Edwards). But even giving weight to this statement of a single legislator, the remark does not

address the key question: whether a creditor's claim is a "claim secured" by the debtor's personal residence within the meaning of § 1322(b)(2) when the value of the creditor's interest in the property is zero and the creditor does not hold a "secured claim" under § 506(a)(1). The Agency's appeal to "subsequent legislative history" from 1994 is even "less illuminating than the contemporaneous evidence," *Hagen v. Utah*, 510 U.S. 399, 420 (1994), and it provides at best equivocal support for the Agency's position. *Compare In re Frame*, No. 09-41010, 2009 WL 8725111, at *2–3 (Bankr. D. Minn. Sept. 23, 2009), *with Bartee*, 212 F.3d at 292–94. We think the text of the statutes and the textual analysis of *Nobelman* are sufficient to resolve this case in favor of the debtors, and the legislative history does not change that conclusion.

The Agency complains that the bankruptcy court's interpretation of the statutes will have deleterious policy consequences. They say that a rule allowing modification of creditor rights in this situation places undue weight on the judicial valuation process and leads to arbitrary results. For example, a creditor with one dollar of equity in the debtor's home is accorded the full protection of § 1322(b)(2)'s antimodification provision under *Nobelman*, but the lien of a creditor with no equity (like the Agency here) may be avoided in full. *See In re Dickerson*, 222 F.3d 924, 926 (11th Cir. 2000). As other courts have observed, however, "[b]right-line rules that use a seemingly arbitrary cut-off point are common in the law," and "[s]imply pointing out that some arbitrariness occurs is not a compelling objection." *McDonald*, 205 F.3d at 613; *see also Lane*, 280 F.3d at 669.

The Agency also contends that allowing modification of its rights fails to give adequate consideration to pre-Code practices that protected the state-law rights of creditors, including a presumption that liens pass through bankruptcy unaffected. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). The Court in *Nobelman*, for example, focused on bargained-for rights of a creditor that are reflected in the relevant mortgage instruments and protected under state law. 508 U.S. at 329. As the Eleventh Circuit explained, however, our holding

does not derogate the protected rights alluded to by the *Nobelman* Court, but rather recognizes that only the rights secured by some remaining equity will be protected from modification. . . . A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing.

*Tanner*, 217 F.3d at 1360 (internal quotation omitted).

The Agency also urges that allowing modification of its rights would provide an unwarranted windfall to the debtors. If the debtor were allowed to strip liens attributable to junior mortgages and retain the property, the Agency says, the property might later increase in value, perhaps beyond the amount owed on the more senior mortgages that the debtor was not allowed to avoid. It is theoretically possible, of course, that a debtor might benefit from lien stripping in some circumstances. But "[t]here is always some theoretical potential for the value of the collateral to increase," and "if the possibility of property appreciation were to preclude lien avoidance, no final determination could ever be made in a bankruptcy case." *In re Mann*, 249 B.R. 831, 838 (B.A.P. 1st Cir. 2000) (internal quotation omitted).

The debtors have policy arguments too. Requiring a creditor to have a "secured claim" under § 506(a)(1) before it can avail itself of § 1322(b)(2)'s antimodification provision "better serves the policy imperatives of the Bankruptcy Code by encouraging debtors to first consult Chapter 13 before seeking either to reorganize pursuant to the more expensive and cumbersome Chapter 11 or liquidate pursuant to Chapter 7." *Bartee*, 212 F.3d at 294–95; *see also Tanner*, 217 F.3d at 1360; *McDonald*, 205 F.3d at 614. The wisdom of a rule in this context is debatable either way, but the district court's decision is more faithful to the text of the statutes and avoids rendering § 506(a)(1) a nullity.

\*       \*       \*

The judgment of the district court is affirmed.

_____