IN RE : Chiquita M. ETHERIDGE, Debtor

**Chiquita M. Etheridge, Plaintiff**

v.

**CitiMortgage Inc., Defendant**

**CASE NO. 15–41694–LWD**

**ADVERSARY NO. 15-04054-LWD**

United States Bankruptcy Court, S.D. Georgia.

Signed January 27, 2016

Filed January 28, 2016

Jeffrey S. Hanna, Law Office of Jeffrey S. Hanna, Savannah, GA, for Plaintiff.

1. See Footnote 1 attached

*CONSENT ORDER*

Lamar W. Davis, Jr., Judge U.S. Bankruptcy Court Southern District of Georgia

The Plaintiff having filed a Complaint to Determine Dischargeability, and parties now being in agreement as to the disposition of this matter, and the Court being otherwise fully advised in the premises thereof, it is hereby:

ORDERED that the second lien of Citi-Mortgage on the teal property commonly known as 454 Garden Acres Way, Pooler, GA 31322 is hereby avoided and stripped provided the following conditions are met: The Defendant's claim shall be classified as a wholly unsecured homestead mortgage lender and shall be discharged upon Debtor's successful completion of her Chapter 13 case pursuant to 11 U.S.C. § 1328; upon entry of discharge CitiMortgage shall release its lien; that should this case be dismissed or converted to a Chapter 7, this Order will be null and the lien of CitiMortgage, Inc. shall remain intact.

IT IS FURTHER AGREED that each party shall bear their own attorney's fees and cost in this adversary proceeding.

SO ORDERED this 27th day of January, 2016[1]

Attachment

But see discussion *In re Smith* 514 B.R. 331 (Bankr.S.D.Ga.2014):

It has long been recognized in bankruptcy law that unless federal interests require otherwise, property interests are created and defined by state law *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)

The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United

States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended *only to the extent of actual conflict* with the system provided by the Bankruptcy Act of Congress. Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different States. For example, the Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the *validity of mortgages,* priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the states.

*Id.* at 54 n. 9, 99 S.Ct. 914 (emphasis added) (citations omitted) (internal quotation marks omitted).

In its later decision, *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court reaffirmed the importance of applying state property law in the bankruptcy context when it was asked to decide whether an underwater mortgage could be avoided despite the antimodification provisions of 11 U.S.C. § 1322(b)(2).[2] The Court read that exception broadly, focusing on the fact that what is prohibited is a modification of the lender's "rights," not merely the status of its claim. *Id.* at 328, 113 S.Ct. 2106. There, the debtors attempted to "strip down" the lender's secured claim in their plan to the fair market value of the residence and treat the remaining portion of the bank's claim as unsecured pursuant to 11 U.S.C. § 506(a).[3] *Id.* at 326, 113 S.Ct. 2106. The Court held that the debtors "were correct in looking *334 to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," but even accepting the debtors' valuation, "the bank is still the 'holder' of a 'secured claim,'" because the debtors' home retained some value as collateral. *Id.* at 328–29, 113 S.Ct. 2106. Therefore, the bank's "rights" as the holder of a secured claim remained protected by § 1322(b) and were not necessarily "limited by the valuation of its secured claim." *Id.* at 329, 113 S.Ct. 2106. These "rights" the Court held, are determined by the relevant mortgage instruments which are enforced under state law and include "the right to retain the lien until the debt is paid off." *Id.* The Eleventh Circuit in a later case limited the scope of *Nobelman* when it ruled that a lender's lien on the debtor's residence is protected against modification under § 1322(b)(2) only if it retains some value in the collateral but not when the claim is wholly unsecured. *Tanner v. FirstPlus Fin., Inc.* (*In re Tanner*), 217 F.3d 1357 (11th Cir.2000) (lien avoidance action brought in an adversary proceeding). The court held "that the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence." *Id.* at 1360; *see also Branigan v. Davis* (*In re Davis*), 716 F.3d 331 (4th Cir.2013) (avoidance action brought in a motion); *Zimmer v. PSB*

*Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir.2002) (adversary proceeding); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002) (plan provision); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir.2001) (adversary proceeding); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277 (5th Cir.2000) (plan provision); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir.2000) (adversary proceeding); *Fisette v. Keller (In re Fisette)*, 455 B.R. 177 (8th Cir. BAP 2011)(plan provision); *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166 (10th Cir. BAP 2005) (adversary proceeding); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831 (1st Cir. BAP 2000) (plan provision).

This view is the overwhelming majority, but by no means the universal view of modification of wholly unsecured second liens. [4] For a time there was a distinct minority view, albeit one which is now nearing extinction. *See American Gen. Fin., Inc. v. Dickerson*, 229 B.R. 539, 542 (M.D.Ga.1999)(reasoning that § 1322(b)(2) emphasizes the existence of the lien, not the value of the lien [5] because in the clause prohibiting modification of homestead liens, Congress could have repeated the term of art "secured claim" instead of using the phrase "a claim secured ... by"), *rev'd*, 222 F.3d 924 (11th Cir.2000). On appeal, the Eleventh Circuit expounded on this minority view even as it ultimately reversed the district court and followed *Tanner:*

> However, were we to decide this issue on a clean slate, we would not so hold. We find persuasive the district court's reasoning that providing "anti-modification" protection to junior mortgagees where the value of the mortgaged

property exceeds the senior mortgagee's *335 claim by at least one cent, as prescribed by the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), but denying that same protection to junior mortgagees who lack that penny of equity, places too much weight upon the valuation process. As we have noted "[v]aluation outside the actual market place is inherently inexact." *Rushton v. Commissioner of Internal Revenue*, 498 F.2d 88, 95 (5th Cir. 1974). Given the unavoidable imprecision and uncertainty of the valuation process, we think that choosing to draw a bright line at this point is akin to attempting to draw a bright line in the fog. Moreover, we believe that Congress's use of the phrase "a claim secured only by" instead of the term "secured claim" to describe those claims which could not be modified in a Chapter 13 bankruptcy plan supports the conclusion that the "anti-modification" protection of § 1322(b)(2) should extend to all claims secured solely by the debtor's principal residence, not just those junior homestead mortgages where there is sufficient equity in the subject property to support both the entire senior and part of the junior homestead mortgages. *See* 11 U.S.C. § 1322(b)(2); *see also United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir.1999) ("The starting point for all statutory interpretation is the language of the statute itself.").

Nonetheless, under the prior precedent rule we must apply the rule established by this court in *In re Tanner*, 217 F.3d 1357 (11th Cir.2000) (holding that § 1322(b)(2) of the Bankruptcy Code protects only those homestead mortgages that are se-

cured by some existing equity in the debtor's principal residence according to § 506(a)). *American Gen. Fin., Inc. v. Dickerson (In re Dickerson )*, 222 F.3d 924, 926 (11th Cir.2000) (alteration in original).[6]

Then in *In re Davis,* 547 B.R. 480, 2015 WL 5299458 (Bankr.S.D.Ga.2015) (footnote 4) I observed:

In a prior decision, I expressed my agreement with the distinct minority view that existed before the circuit court decisions mentioned *supra* in Footnote 3. *In re Smith,* 514 B.R. 331, 335 n. 6 (Bankr.S.D.Ga.2014) (Davis, J.). The minority view basically held that when analyzing a "stripoff" situation in Chapter 13, a court should look first to whether the creditor holds a mortgage secured only by the debtor's principal residence. If so, the creditor's rights under § 1322(b)(2) may not be modified regardless of the presence or absence of underlying equity in the residence. Indeed, a later panel of the Eleventh Circuit also agreed with the minority but, like this Court in *Smith*, ultimately held that it was bound to follow the *Tanner* decision of its prior panel. *American Gen. Fin., Inc. v. Dickerson (In re Dickerson),* 222 F.3d 924, 926 (11th Cir.2000). The Supreme Court recently issued a decision that could conceivably resurrect the minority view. Although arising in a Chapter 7 case which required interpretation of § 506(d) rather than § 1322(b)(2), the Supreme Court used similar reasoning to that of the minority view mentioned supra in holding that a wholly unsecured lien in Chapter 7 cannot be 'stripped off.' *Bank of America, N.A. v. Caulkett,* —— U.S. ——, 135 S.Ct. 1995, 192 L.Ed.2d 52 (2015). Specifically the Court noted: 'secured claim' in § 506(d) mean[s] a claim supported by a security interest in property, re-gardless of whether the value of that property would be sufficient to cover the claim. 'Id. at 3. Like the *Dickerson* Court, the Supreme Court also had reservations about a statutory interpretation that placed significant emphasis on judicial valuations. *Id.* at *5. The Court observed that a reading allowing only creditors holding a lien with at least $1 of equity based on a judicial valuation to retain their lien through the bankruptcy could lead to arbitrary results. *Id.*

I agree with the Court's reasoning in *Caulkett,* and believe it is conceivable that the same reasoning might apply in interpreting the phrase "claim secured only by a security interest in real property that is the debtor's principal residence ..." which appears in § 1322(b). This may well lead to a reexamination the precedential authority of *Tamer* and the other circuit court opinions that have addressed this issue.

Therefore, approval of this Consent Order should not be considered a ruling on the substantive merits of the outcome, only an indication that when parties, ably represented by counsel, elect to settle a matter, the Court is not inclined to interfere absent controlling precedent to the contrary. Here there is no such precedent and the few courts to consider the issue since *Caulkett* was decided have limited its scope to the Chapter 7 context. See *e.g. In re Travers,* 541 B.R. 639 (Bankr. E.D.Ky.2015). I recognize this well considered view in *Travers,* but remain unconvinced.

*Caulkett* holds that "secured claim" in § 506(d) means a "claim supported by a security interest in property regardless of whether the value of that property would be sufficient to cover the claim". *Caulkett,* 135 S.Ct. at 1999. Conceding the obvious, Caulkett was a Chapter 7 case and the language of Chapter 13 at issue differs in prohibiting modification of "rights of hold-

ers of secured claims" which are "secured only by a security interest in real property" that is the debtor's principal residence.

Still I cannot fathom how the slight difference in phraseology between the term "secured claim", defined by *Caulkett.* following *Dewsnup* to mean a claim supported by a security interest in property regardless of its value—and "secured claim" ... secured only by a security interest in debtors residential real property in Chapter 13—could alter the substantive result.

As Justice Scalia observed in his concurring opinion in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992):

> When the phrase "applicable nonbankruptcy law" is considered in isolation, the phenomenon that three Courts of Appeals could have thought it a synonym for "state law" is mystifying. When the phrase is considered together with the rest of the Bankruptcy Code (in which Congress chose to refer to state law as, logically enough, "state law"), the phenomenon calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting * *2251 text, that it any longer makes sense to talk of "a government of laws, not of men." Speaking of agreed-upon methodology: It is good that the Court's analysis today proceeds on the assumption that use of the phrases "state law" and "applicable nonbankruptcy law" in *other* provisions of the Bankruptcy Code is highly relevant to whether "applicable nonbankruptcy law" means "state law" in § 541(c)(2), since consistency of usage within the same statute is to be presumed.

The *Caulkett* opinion acknowledged that Courts are reluctant to ascribe different meanings to the same words appearing in a statute. Fundamentally this question turns on what the Code means when it defines the scope of underwater residential mortgages in two chapters of the same statute. But given the statutory language, the value of property must be irrelevant to the *in rem* validity of the mortgage in both Chapter 7 and 13.

Still it remains unsettled after *Caulkett* whether an underwater residential mortgage in Chapter 13 should be treated any differently than one in Chapter 7, and since at this point, there is no binding authority on this issue, that question remains for determination at another time.