**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**November 30, 2016**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE CHUCK ODIFU EGBUNE,

Debtor.

_____

CHUCK ODIFU EGBUNE,

Appellant,

v.

DOUGLAS B. KIEL, Chapter 13 Trustee
and ALWAYS ENTERPRISES, INC.,
d/b/a A-1 BAIL BONDS,

Appellees.

BAP No. CO-16-006

Bankr. No. 11-38127
Chapter 13

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado
_____

Before **NUGENT**, **SOMERS**, and **HALL**, Bankruptcy Judges.
_____

**HALL**, Bankruptcy Judge.
_____

Appellant Chuck Odifu Egbune (the "Debtor") appeals an order of the bankruptcy

court overruling his post-confirmation objection to the claim of secured creditor Always

---

[1] This unpublished opinion may be cited for its persuasive value, but is not
precedential, except under the doctrines of law of the case, claim preclusion, and issue
preclusion. 10th Cir. BAP L.R. 8018-6.

Enterprises, Inc. d/b/a/ A-1 Bail Bonds ("A-1") and denying the Debtor's related request to convert the objection to a motion to reclassify A-1's proof of claim.

## I.  BACKGROUND

On October 5, 2009, A-1 provided a bail bond for Velma Gilbert. The Debtor and others guaranteed the bond and the bond premium for Ms. Gilbert by signing a promissory note (the "Note"). The Debtor secured the bond and the bond premium with a deed of trust (the "Deed of Trust") on his primary residence at 4694 Briarglen Lane, Highlands Ranch, Colorado (the "Residence").[2] The Residence had been previously encumbered by a first mortgage held by Bank of America, N.A. and a second mortgage held by Green Tree Servicing LLC ("Green Tree").[3]

On December 2, 2011, the Debtor filed a Chapter 13 bankruptcy in the District of Colorado.[4] The Debtor is a licensed attorney in the state of Colorado, who, among other things, assists individuals in filing bankruptcy petitions. The Debtor did not list A-1 as a creditor on his statements or schedules but did include A-1 on his creditor-mailing matrix.[5] On December 5, 2011, the Debtor filed his *Motion to Determine Secured Status*

---

[2] The Deed of Trust provides that it secures $35,000 as described in the Note.

[3] On August 31, 2015, Green Tree Servicing LLC combined with Ditech Mortgage Corp to form "ditech, a Walter Company." For purposes of this opinion, ditech will be referred to as Green Tree.

[4] This was the Debtor's second Chapter 13 petition after having a previous Chapter 13 case filed in the District of Wyoming dismissed on May 20, 2011.

[5] In fact, the Debtor did not schedule A-1 as a creditor until November 23, 2015, almost four years post-petition notwithstanding active participation by A-1 as a creditor in the bankruptcy case.

*Pursuant to 11 U.S.C. 506* (the "506 Motion") seeking to strip off Green Tree's second mortgage lien against the Residence. The 506 Motion did not include a request to strip off A-1's lien. While Green Tree did not file a response to the 506 Motion, A-1 objected on the ground that there was sufficient equity in the Residence to secure Green Tree's mortgage and A-1's lien.[6] On January 5, 2012, A-1 filed *Proof of Claim 7-1* (the "A-1 Claim") asserting a secured claim in the amount of $22,398 (including costs and attorneys' fees) with interest accruing annually at 18%.[7] The Debtor did not object to the A-1 Claim at any time prior to confirmation of his Chapter 13 plan.[8]

The Debtor filed numerous Chapter 13 plans to which A-1 objected on the basis that the plans did not provide for payment of the A-1 Claim. A-1 was "very active" in objecting to these plans to ensure that its claim was recognized and treated as a secured claim.[9] On July 10, 2012, the Debtor filed his sixth plan (the "Plan").[10] Section V(A) of the Plan provided for the A-1 Claim, requiring direct payments of $25.00 per month for

---

[6] D. Colo. L.B.R. 3012-1(7) provides that an objection to the valuation of collateral will be considered in conjunction with the hearing on plan confirmation. Accordingly, the bankruptcy court delayed ruling on the 506 Motion until it ruled on plan confirmation.

[7] Appellant's App. at 22.

[8] The Debtor did object to numerous other claims in 2012 and 2013. Tr. of Mar. 3, 2016 Hearing at 20, *in* Appellant's App. at 196.

[9] Tr. of Mar. 3, 2016 Hearing at 20, *in* Appellant's App. at 196.

[10] *Amended Chapter 13 Plan Including Valuation of Collateral in Classification of Claims in* Appellant's App. at 26.

360 months to A-1 and listing the Residence as A-1's collateral.[11] Section IV(C)(1) of the

Plan provided for the treatment of claims subject to 11 U.S.C. § 506.[12] Under this section,

the Plan listed all claims that were subject to a § 506 motion valuing the collateral

securing the applicable claim at zero ($0), leaving such a creditor unsecured. Green

Tree's claim was the only claim listed in this section of the Plan.

As a result of the provision in the Plan providing for payments to A-1 and listing

the Residence as A-1's collateral, A-1 withdrew its objection to the 506 Motion, stating

that the Debtor had "confirmed that [A-1's] secured status will not be impaired by his

Motion to Determine Secured Status."[13] On August 21, 2012, the bankruptcy court

entered the *Order Confirming Debtor's/Debtors' Amended Chapter 13 Plan* (the

"Confirmation Order").[14] The bankruptcy court also entered its *Order Determining*

*Secured Status of Lien and Avoiding Lien Pursuant to 11 U.S.C. § 506* (the "506 Order"),

in which it stated that the "mortgage lien held by Green Tree Servicing . . . is valued at

---

[11] *Id*. at 5, *in* Appellant's App. at 30. This amount was insufficient to pay A-1's claim in full.

[12] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. All references to "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[13] *Withdrawal of Objection to Debtor's Motion to Determine Secured Status Pursuant to 11 U.S.C. 506* at 1, *in* Appellant's App. at 32; Tr. of Mar. 3, 2016 Hearing at 13, *in* Appellant's App. at 189 ("A-1's objection [to the 506 Motion] was holding up confirmation" of a plan). Green Tree did not file an objection to the 506 Motion.

[14] Appellant's App. at 34.

zero ($0) and is entirely unsecured for the purposes of the debtor's plan."[15] Neither A-1 nor A-1's lien was mentioned in the Confirmation Order or the 506 Order.

On January 19, 2015, the Debtor filed his *Motion for Order Extinguishing Green Tree Servicing Mortgage's Second Mortgage Lien*.[16] The bankruptcy court then entered its *Order Extinguishing Green Tree Servicing's Second Mortgage Lien on 4694 Briarglenn Ln, Highlands Ranch CO 80130* (the "Green Tree Order") on February 13, 2015.[17] Neither A-1 nor the A-1 lien was mentioned in the Green Tree Order. Thereafter, on October 21, 2015, the Debtor received a Chapter 13 discharge upon completion of the Plan.

After the entry of discharge but prior to closing of the case, A-1 commenced a foreclosure proceeding against the Residence. On November 23, 2015, the Debtor filed his *Objection to Proof of Claim # 7-1 filed by [A-1] Pursuant to 11 U.S.C. § 502 and Rule 3001 and 3002.1 of the Bankruptcy Code* (the "Claim Objection").[18] Consequently, on December 22, 2015, A-1 filed its *Response and Motion to Strike Objection to Proof of Claim 7-1*.[19]

---

[15] 506 Order at 1, *in* Appellant's App. at 36.

[16] Bankr. ECF No. 124.

[17] Appellant's App. at 37.

[18] Appellant's App. at 38.

[19] Appellant's App. at 52.

The Debtor filed the *Debtor's Amended Supplement to Objection [to] His Previous Objection to Proof of Claim Number 7-1*[20] on February 1, 2016, and his *Amended Debtor's Supplement to [sic] His Previous Objection To Proof of Claim #7-1 Filed By [A-1] and A Request To Convert the Objection To A Motion To Reclassify Claim 7-1 As Unsecured Pursuant to 11 U.S.C. 502(j) and Rule 3001 and 3008 of the Bankruptcy Code* (the "Motion to Reclassify") on February 2, 2016.[21] Then the Debtor filed a *Motion for Determination of Termination or Absence of the Automatic Stay* (the "Automatic Stay Motion") on February 25, 2016.[22]

On March 3, 2016, the bankruptcy court issued an oral ruling (the "Oral Ruling") that set forth five orders of the bankruptcy court, addressing six separate pleadings before the bankruptcy court. The bankruptcy court overruled the Claim Objection and denied the related Motion to Reclassify because the Debtor failed to show "cause" sufficient for the bankruptcy court to accept and consider the late filed objection. The bankruptcy court pointed out that the Debtor never disputed A-1 when it said it was withdrawing its objection to the Plan because it had been assured the 506 Motion would not affect or impair its lien. Additionally, the Debtor's only explanation for his delay in objecting to the A-1 Claim was stress he experienced in 2012, which the bankruptcy court accepted as

---

[20] Bankr. ECF. No. 202.

[21] Appellant's App. at 60.

[22] The Automatic Stay Motion is not in the record on appeal but is referenced by the bankruptcy court in its Oral Ruling. Tr. of Feb. 25, 2016 Hearing at 64-65, *in* Appellant's App. at 170-71.

explaining a short delay but not the four-year delay since the A-1 Claim had been filed. The bankruptcy court also looked at the type of objections raised by the Debtor and noted they all related to alleged misconduct that occurred in 2009 when the Note was signed or when the A-1 Claim was filed in January 2012. The bankruptcy court found the unexplained delay prejudiced A-1 and interfered with efficient court administration and, therefore, denied the Debtor's objection to the A-1 Claim. Consistent with its Oral Ruling, the bankruptcy court entered orders on the Claim Objection and the Motion to Reclassify (herein referred to collectively as the "Claim Objection Pleadings"), as well as three other pleadings not at issue in this appeal. Furthermore, the bankruptcy court denied the Automatic Stay Motion finding the "stay terminated on October 21, 2015, the date that the discharge entered" and that "no violation of the automatic stay is possible after the entry of the Order of Discharge."[23]

On March 22, 2016, the Debtor filed a *Notice of Appeal*, appealing any "Judgment/Order in favor of [A-1] and the [Trustee]" made in the Oral Ruling.[24] This Court determined that, of the bankruptcy court's orders, the orders on the Claim Objection Pleadings and the Automatic Stay Motion satisfied this condition.[25] The Court ultimately dismissed the appeal of the order on the Automatic Stay Motion as

---

[23] *Minutes of Proceeding/Minute Order* at 2, *in* Appellant's App. at 82.

[24] BAP ECF No. 1. The Debtor amended the *Notice of Appeal*, filing *Debtor's Amended Notice of Appeal and Statement of Election* on April 4, 2016. Appellant's App. at 101.

[25] BAP Case No. CO-16-008, Dkt. Entry No. 12, *Order Construing Notice of Appeal as Two Notices of Appeal and Directing Payment of Fees*.

7

interlocutory.[26] Therefore, the appeal of the Oral Ruling, as it relates to the Claim

Objection Pleadings, is the sole subject of our review.

## II.     JURISDICTION AND STANDARD OF REVIEW

An order on an objection to a claim is a final order over which this Court has

jurisdiction.[27] Review of whether a confirmed plan supersedes an allowed claim is a legal

issue, which we review *de novo.*[28] We review a request for reconsideration of a claim for

an abuse of discretion.[29] Under the abuse of discretion standard, a trial court's decision

will not be overturned "unless the appellate court has a definite and firm conviction that

the lower court made a clear error of judgment or exceeded the bounds of permissible

---

[26] BAP Case No. CO-16-008, Dkt. Entry 22, *Order Dismissing Interlocutory Appeal*.

[27] 28 U.S.C. 158(a)(1); *Wilson v. Broadband Wireless Int'l Corp.*, 295 B.R. 140, 143 (10th Cir. BAP 2003); *In re Russell*, 386 B.R. 229, 230 (8th Cir. BAP 2008).

[28] *Alderete v. Educ. Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir. 2005) ("[A] conclusion of law regarding the legal effect of the bankruptcy court's findings . . . [is] reviewed *de novo*.").

[29] *In re Rafter Seven Ranches LP*, 362 B.R. 25, 28 (10th Cir. BAP 2007) (The bankruptcy court's denial of a motion to reconsider is subject to the abuse of discretion standard of review); *In re Jones*, No. BAP WY–98–015, 1998 WL 870341, at *2 (10th Cir. BAP Dec. 15, 1998) (denial of motion to reconsider an order denying objection to claim reviewed for abuse of discretion); *In re Frontier Airlines, Inc.*, 137 B.R. 808, 810 (D. Colo. 1992) (if reconsideration of claim sought after time to appeal passed, courts view as motion to reconsider under Rule 60(b), which is reviewed for abuse of discretion); *In re Kirwan*, 164 F. 3d 1175, 1177 (8th Cir. 1999) (decision under § 502(j) reviewed for abuse of discretion); *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) (bankruptcy court's reconsideration of a claim is "virtually plenary"); *S.G. Wilson Co. v. Cleanmaster Indus. (In re Cleanmaster Indus.)*, 106 B.R. 628, 630 (9th Cir. BAP 1989); *In re Mathiason*, 16 F.3d 234, 239 (8th Cir. 1994).

8

choice in the circumstances."[30] The trial court abuses its discretion when its "decision is 'arbitrary, capricious or whimsical,' or results in a 'manifestly unreasonable judgment.'"[31]

### III. DISCUSSION

**A. The terms of the Plan do not supersede the allowed A-1 Claim.**

The Debtor argues that the bankruptcy court erred in holding that the A-1 Claim superseded the provisions of the Plan and further argues that the Plan and the 506 Motion stripped A-1's lien, leaving the A-1 Claim unsecured. Despite filing a motion and receiving two orders stripping Green Tree's lien, the Debtor argues that a determination of secured status under § 506(a) may be accomplished through plan confirmation in lieu of filing a separate motion or adversary proceeding. The Debtor concludes that the Plan superseded the A-1 Claim and that A-1's lien was extinguished because it was not recognized in the Plan.

In contrast, A-1 argues that, in confirming the Plan, the bankruptcy court did not strip A-1's lien, but rather the Plan treated A-1 as a secured creditor retaining its lien on the Residence. In support, A-1 asserts its lien was not the subject of the 506 Motion or any other proceeding to strip its lien and that the lien was not extinguished by the Plan.

---

[30] *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991) (quoting *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)).

[31] *Id.* (quoting *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987)).

Further, A-1 argues the Debtor's interpretation of the Plan is "wholly unorthodox" and the Debtor failed to timely object to the A-1 Claim.[32]

The bankruptcy court found the Plan did not extinguish or strip off or down[33] A-1's lien. Supporting this finding, the only language in the Plan addressing the claim of A-1 states:

V. OTHER PROVISIONS

A. Payment will be made directly to the creditor by the Debtor(s) on the following claims:[34]

| Creditor | Collateral, if any | Monthly Payment Amount | No. Of Months to Payoff |
|---|---|---|---|
| A-1 Bail Bonds d/b/a Always Enterprises | Homestead @ 4694 Bria[r]glen Ln | 25 | 360 |

No other provision of the Plan even mentions A-1 much less (i) discusses the value of A-1's lien, (ii) purports to extinguish or strip off A-1's lien on the Residence or (iii) determines, pursuant to § 506, the extent of A-1's secured and unsecured claims.[35]

---

[32] Appellee's R. Br. 4.

[33] "[T]here is subtle distinction drawn between 'stripping off' and 'stripping down' a lien. If the entire lien is removed, then it is considered 'stripping off.' If the lien is only partially secured, then it is considered 'stripping down.'" *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166, 168 n.1 (10th Cir. BAP 2005) (citing *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 37, n.2 (9th Cir. BAP 1997)).

[34] Appellant's App. at 26-31.

[35] Appellant's App. at 31.

After the Plan was filed and in recognition of the treatment of the A-1 Claim as secured, A-1 withdrew its objection to the 506 Motion in reliance on the Debtor's confirmation that A-1's secured claim would not be impaired by the 506 Motion.[36] The Debtor never disputed this.

The Debtor benefitted directly from the withdrawal of A-1's objection to the 506 Motion as it was holding up confirmation of the Plan. With A-1's objection withdrawn, the 506 Order was entered. The 506 Order, likewise, never references A-1 or its secured claim, instead addressing only Green Tree and its lien. Additionally, the Plan was confirmed on the same date, and the Confirmation Order contains no provision extinguishing or stripping off the lien of A-1 on the Residence. As confirmed, the Plan expressly provides that the A-1 Claim remains secured by the Residence. Given these simple facts, it is clear that the bankruptcy court did not conclude that the A-1 Claim superseded the Plan but, instead, concluded the Plan simply did not affect or alter A-1's lien.

Moreover, the bankruptcy court's conclusion is consistent with § 1327(a), which provides that confirmation of a Chapter 13 plan is binding on not only the debtor, but also every creditor whether or not the plan treats their claims or whether the creditor has objected or accepted the plan.[37] The secured status of a creditor is an issue intrinsic to

---

[36] Appellant's App. at 32. Similarly, 2 ½ years later, the Green Tree Order was entered, which again addressed only the mortgage lien of Green Tree, making no reference to A-1 or its lien. Appellant's App. at 37.

[37] *Williams v. M. Bruenger & Co. (In re Brannan)*, 532 B.R. 834, 838 n.19 (Bankr. D.Kan. 2015) (citing 11 U.S.C. § 1327(a) and *In re Talbot*, 124 F.3d 1201 (10th Cir.

11

confirmation of a Chapter 13 plan.[38] Thus, any action taken post-confirmation to avoid or otherwise alter secured status provided by a confirmed plan is barred by the *res judicata* effect of § 1327(a).[39]

Thus, the Debtor is incorrect that the bankruptcy court ruled that the A-1 Claim superseded the Plan. The bankruptcy court merely found that the A-1 Claim was filed as a secured claim, the Debtor conceded at various times that A-1 was secured, and the Plan contained no language extinguishing or stripping off A-1's lien on the Residence. These findings of the Court are not arbitrary, capricious or whimsical and did not result in a manifestly unreasonable judgment, but one entirely consistent with relevant law.

---

1997)); *In re Rutt*, 457 B.R. 97, 101 (Bankr. D.Colo. 2010) ("Section 1327 binds the Debtor, and the secured creditor to the treatment provided for in the confirmed plan. What Debtor now proposes does not fall within the narrow circumstances permitting modification of a confirmed plan under section 1329(a). Debtor is not merely seeking to 'increase or reduce the amount of payments on claims of a particular class provided for by the plan;' or 'to extend or reduce the time for such payments.' Debtor is seeking to strip off the lien of a creditor treated as secured by the confirmed plan and to reclassify it as a general unsecured creditor.").

[38] *Brannan,* 532 B.R. at 840; *Atkins v. Bank of America, N.A. (In re Atkins)*, 497 B.R. 568, 570-71(Bankr. D.Minn. 2013) ("[T]he provisions of a confirmed plan bind a debtor and a creditor as confirmation is, essentially, an adjudication of the issues of classification and treatment of claims provided for in the plan.").

[39] *Brannan,* 532 B.R. at 840; *Atkins*, 497 B.R. at 570-71; *In re Berrouet*, 469 B.R. 393, 397 (Bankr. N.D.Ga. 2012) (citing *In re Cruz,* 253 B.R. 638, 641 (Bankr. D.N.J. 2000) (motion to determine secured status filed six months after plan confirmation; because debtor could have raised the value of his home and proposed treatment to strip the second priority lien at confirmation, the confirmation order is *res judicata* as to the value of debtor's home and the treatment of creditor's second priority lien claim.); *In re McCarter*, No. G08-23720-REB, 2014 WL 2086691, at *2 (Bankr. N.D.Ga. Mar. 6, 2014) ("[U]pon confirmation, the value of a secured claim is fixed. The plan as confirmed is accorded the effect of *res judicata*, barring litigation over any matters that were or could have been asserted before confirmation.")

**B. The Plan contains no language stripping off A-1's lien on the Residence.**

The Debtor's arguments that the various provisions of Chapter 13 (§§ 1321; 1322(b)(2) & (c)(2); 1324; 1325(a)(5)(B)(i) & (ii); 1327(c); and 1328(a)) require that A-1's lien be extinguished all rest on facts that are simply not available in this case. The Debtor did not seek to strip A-1's lien through the 506 Motion, and the language in the Plan did not adequately put A-1 on notice that its lien would be stripped upon completion of all payments and entry of discharge. It is a fundamental principle of bankruptcy law that, unless a debtor objects to a claim secured by a lien against real property, the lien passes through bankruptcy unaffected.[40] "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another-namely, an action against the debtor *in rem*."[41]

The Debtor's argument that *United Student Aid Funds, Inc. v. Espinosa*[42] renders the terms of the Plan binding as to A-1 is misplaced as the Plan recognized the A-1 Claim and expressly provided it remains secured by a lien on the Residence. As the bankruptcy court noted, A-1 did not slumber on its rights, but objected until the Plan treatment no longer altered its secured claim.[43] The Debtor's argument that the Plan stripped A-1's

---

[40] *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992).

[41] *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

[42] 559 U.S. 260 (2010).

[43] Tr. of Feb. 25, 2016 Hearing at 44, *in* Appellant's App. at 150; Tr. of Mar. 3, 2016 Hearing at 25, *in* Appellant's App. at 201.

lien is, therefore, unfounded. Accordingly, the bankruptcy court's findings and conclusions were not an abuse of its discretion.

### C. The bankruptcy court did not abuse its discretion in overruling the Debtor's post-confirmation objection to the A-1 Claim and denying the Motion to Reclassify.

The Debtor argues that the A-1 Claim is deficient because: (1) it does not comply with § 502 or Rules 2016, 3001, and 3002.1 in itemizing interest, costs, attorneys' fees and expenses; (2) A-1 cannot charge default interest under C.R.S. 5-3-302; (3) the Deed of Trust and Note are inconsistent; (4) A-1 did not comply with various disclosure requirements at the time the Note and Deed of Trust were signed; and (5) the debt was fully paid prepetition. Accordingly, the Debtor concludes the bankruptcy court erred in overruling the Claim Objection and denying the Motion to Reclassify.

A-1 argues that the statutory mandate of § 502(j) provides that late objections to claims are allowed only for "cause," placing the allowance of such objections within the bankruptcy court's discretion and that the Debtor bears the burden to demonstrate "cause" sufficient for the bankruptcy court to accept and consider a late filed objection. A-1 further contends that the bankruptcy court correctly weighed the extent and reasonableness of any delay, prejudice to any party in interest, the effect on efficient court administration, and the moving party's good faith and correctly concluded that the Debtor did not met his burden to show "cause" to sustain the objection to the A-1 Claim.

14

The bankruptcy court has the authority to reconsider the allowance or disallowance of claims for cause pursuant to § 502(j).[44] Any claim filed "is deemed allowed, unless a party in interest . . . objects."[45] As the advisory committee for Rule 3008 noted, the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually absolute, as the court may decline to reconsider an order of allowance or disallowance without a hearing or notice to the parties involved.[46] Section 502(j) provides in pertinent part, that "[a] reconsidered claim may be allowed or disallowed according to the equities of the case."[47] Bankruptcy courts have interpreted reconsideration under § 502(j) to be a two-step process.[48] First, the bankruptcy court must decide whether "cause" has been shown. Next, the bankruptcy court must determine whether the "equities of the case" dictate allowance or disallowance.[49]

---

[44] *Amtech Lighting Services Co. v. Payless Cashways (In re Payless Cashways, Inc.),* 230 B.R. 120, 137 (8th Cir. BAP 1999) (reconsideration can be requested at any time, even after expiration of the time to appeal); *In re Gomez,* 250 B.R. 397 (Bankr. M.D. Fla. 1999) (confirmation of plan does not preclude reconsideration of claim); *Brannan*, 532 B.R. at 841; *In re Jones*, No. BAP WY-98-015, 1998 WL 870341, at *2 (10th Cir. BAP Dec. 15, 1998).

[45] 11 U.S.C. § 502(a).

[46] Fed. R. Bankr. P. 3008 advisory committee's note to 1986 amendment.

[47] 11 U.S.C. § 502(j).

[48] *In re Gonzalez*, 490 B.R. 642, 651 (1st Cir. BAP 2013); *In re Tri-State Ethanol Co.*, No. 03-10194, 2009 WL 1079776, at *7 (Bankr. D.S.D. Apr. 21, 2009); *In re Rayborn*, 307 B.R. 710, 720 (Bankr. S.D.Ala. 2002); *In re Jones*, No. 99-13086C-13G, 2000 WL 33673759, at *2 (Bankr. M.D.N.C. Aug. 28, 2000).

[49] *In re Rayborn*, 307 B.R. 710, 720 (Bankr. S.D.Ala. 2002).

Neither the Bankruptcy Code nor the Bankruptcy Rules, however, defines "cause" as used in § 502(j). Courts regularly consider whether "[c]ause may exist when relief would be justified under [Federal Rule of Civil Procedure] 60(b)."[50] Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") sets forth the standards for reconsideration of claims in general and offers an applicable definition of "cause" providing that there may be relief from a judgment or order for:

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence, that with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic) misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[51]

The bankruptcy court applied step one—whether there was cause to reconsider the claim—and noted that § 502(j)'s requirement that "cause" must be shown to reconsider an allowed claim suggests "that late objections are not freely allowed."[52] The transcript of the hearing on the Motion to Reclassify evidences the bankruptcy court's consideration

---

[50] *Gonzalez*, 490 B.R. at 651; *In re Willoughby*, 324 B.R. 66, 72 (Bankr. S.D.Ind. 2005); *In re Colley,* 814 F.2d 1008, 1010–1011 (5th Cir. 1987); *cert. denied,* 484 U.S. 898 (1987); *In re W.F. Hurley, Inc.*, 612 F.2d 392, 396 n. 4 (8th Cir. 1980); *In re Payless Cashways,* 230 B.R. 120, 137 (8th Cir. BAP 1999); *In re Southwest Florida Telecomm.*, 234 B.R. 137, 142 (Bankr. M.D.Fla. 1998); *In re Orsini Santos*, 349 B.R. 762, 769 (1st Cir. BAP 2006).

[51] Fed. R. Civ. P. 60(b).

[52] Tr. of Mar. 3, 2016 Hearing at 19, *in* Appellant's App. at 195.

16

of whether there was cause pursuant to Rule 60(b) to reconsider the allowed claim.[53] In determining that there was not sufficient cause to reconsider the allowance of the A-1 Claim, the bankruptcy court relied heavily on the fact that the Debtor objected to "numerous, numerous other claims in 2012 and 2013," and "filed motions to strip junior liens, but [] never did so for A-1."[54]

Similarly, the Debtor's other objections to the A-1 Claim—A-1's failure to provide the Debtor with a copy of the Note or Deed of Trust, failure to make disclosures under the Truth in Lending Act, and failure to identify interest charges and attorneys' fees—all "easily could have been raised in 2012 rather than 2016."[55] As these delays were "patently unreasonable" (and, in this Court's opinion, inexcusable), the Debtor failed to demonstrate sufficient cause to justify reconsideration of the allowance of the A-1 Claim.[56]

Additionally, the Debtor did not provide any newly discovered evidence that, with reasonable diligence, could not have been discovered at the time the A-1 Claim was filed or evidence that the claim had been satisfied to establish cause to reconsider the A-1 Claim. While the Debtor alleged below, and argues on appeal, that he recently discovered

---

[53] Tr. of Feb. 25, 2016 Hearing at 28, *in* Appellant's App. at 134 ("a motion under 60(b) must be made within a reasonable time and for reasons [in 60(b)] 1, 2, and 3. One is mistake[], inadvertence, surprise, and excusable neglect, which is what you just told me.").

[54] Tr. of Mar. 3, 2016 Hearing at 20, *in* Appellee's App. at 196.

[55] *Id.*

[56] *Id.* at 22, in Appellant's App. at 198.

that a third party paid off the Note, the Debtor proffered no evidence to prove this. Although the bankruptcy court entered the Oral Ruling after conducting a non-evidentiary hearing on the legal issues involved in the Claim Objection Pleadings, the Debtor never requested an evidentiary hearing to establish these facts despite the bankruptcy court's invitation to do so.[57] Thus, there are no facts in the record to suggest newly discovered evidence justifying reconsideration of the A-1 Claim or suggesting the claim had been satisfied. Nor did the Debtor establish any fraud, misrepresentation, or misconduct on the part of A-1 that warranted reconsideration of the A-1 Claim.[58]

Accordingly, the bankruptcy court appropriately considered whether there was "cause" under § 502(j) to reconsider the A-1 Claim, and the decision to overrule the Claim Objection and deny the Motion to Reclassify was not "arbitrary, capricious or whimsical," or a "manifestly unreasonable judgment."[59]

Under step two of the claim reconsideration analysis, the bankruptcy court considered the equities involved in the case. Relying on factors set forth in *In re Fryer*, the bankruptcy court concluded reconsideration of allowed claims is only appropriate after weighing (1) the extent and reasonableness of any delay, or prejudice to any party in

---

[57] Tr. of Feb. 25, 2016 Hearing at 5, *in* Appellant's App. at 181 ("at the hearing no party expressly requested an evidentiary hearing.").

[58] The Debtor argued that the first page of the Note that he signed was not the same as the first page of the Note that was attached the A-1 Claim, but again did not provide any evidence to support these contentions. Furthermore, the Debtor appears to have abandoned this argument on appeal.

[59] *In re Arenas,* 535 B.R. 845, 849 (10th Cir. BAP 2015) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504-1505 (10th Cir. 1994)).

18

interest; (2) the effect on efficient court administration; and (3) the moving party's good faith.[60] After considering these factors, the bankruptcy court concluded the Debtor did not meet his burden to sufficiently demonstrate the equities necessitated allowing a late filed objection to the A-1 Claim. The only justification the Debtor provided for the late filed objection was the "stress" he was under in 2012.[61] However, the bankruptcy court noted that, during the same period of time, the Debtor filed numerous plans, objections, and other pleadings. The bankruptcy court also concluded that allowing a late-filed objection prejudiced A-1 and did not promote efficient court administration. Finally, the bankruptcy court seriously questioned the Debtor's good faith in filing the Claim Objection, noting the Debtor's explanation of stress was undermined by his active role in the bankruptcy case and his prior failures to dispute the A-1 Claim.

The bankruptcy court correctly weighed the equities at stake, applying the test articulated in *In re Fryer* and made numerous findings of fact on the record that weighed against reconsidering the A-1 Claim. Most notably, the bankruptcy court recognized that the Debtor could not adequately explain why he was unable to file a timely objection to the A-1 Claim prior to confirmation of the Plan despite actively participating in his bankruptcy case and objecting to the claims of numerous other creditors. As the Debtor provides no compelling argument on appeal to suggest the bankruptcy court's findings

---

[60] *Fryer v. Easy Money Title Pawn, Inc. (In re Fryer)*, 172 B.R. 1020 (Bankr. S.D.Ga. 1994).

[61] Tr. of Mar. 3, 2016 Hearing at 21, *in* Appellee's App. at 197.

were arbitrary, capricious, or whimsical or that the Oral Ruling was otherwise an abuse of discretion, the decision is affirmed.

## IV.    CONCLUSION

The bankruptcy court made no error in holding that the provisions of the Plan did not extinguish or otherwise modify A-1's lien against the Residence and did not abuse its discretion in determining the Debtor did not establish "cause" sufficient to reconsider the A-1 Claim pursuant to § 502(j). Accordingly, the bankruptcy court's orders on the Claim Objection Pleadings are AFFIRMED.